432 So.2d 1269 (1983)
Alfred E. LITTLE, as successor in interest of Moniac Corporation, Inc., a dissolved corporation
v.
PIZZA WAGON, INC., a corporation, and Jad A. Wolf.
82-35.
Supreme Court of Alabama.
June 3, 1983.
Jerome P. Shinault, Mobile, for appellant.
William H. Saliba, Mobile, for appellees.
Joseph J. Boswell, Mobile, for amicus curiae Thomas W. Adams, Jr.
PER CURIAM.
Plaintiff Alfred E. Little initiated these proceedings on December 26, 1979, against defendants Pizza Wagon, Inc., Jad A. Wolf (as surety for Pizza Wagon, Inc.), and Thomas A. Adams, Jr. Plaintiff's complaint was premised upon defendants' alleged breach of a written leasehold agreement by their: (1) failure to maintain the leased premises; (2) improper transfer and/or assignment of the leased premises; (3) abandonment of the leased premises; and (4) failure to pay rent pursuant to the terms of the lease.
On March 10, 1980, defendant Adams filed a motion to dismiss or, in the alternative, to abate the action as to him, alleging that there was presently pending in the federal district court a civil action filed by him against Little, which suit arose out of the same transaction which is the subject of this lawsuit. Adams alleged that Little had *1270 been served with a copy of the complaint in the federal court action before service was obtained on Adams in the state court action, and that, in addition, Little had filed an appearance in the suit in federal court. He also asserted that the matter raised by Little in the state court constituted a compulsory counterclaim under Federal Rules of Civil Procedure and should be asserted in the federal action.
After a hearing, the trial court granted this motion and dismissed Little's action against Adams.
On May 2, 1980, defendant Wolf filed a motion to stay these proceedings, alleging that the action then pending in the federal district court, brought by Adams against Little, would be a complete bar and defense to any action by Little against Wolf. This motion was granted on June 5, 1980.
Thereafter, defendants Pizza Wagon and Wolf filed a motion for summary judgment, supported by copies of Little's federal court pleadings, as well as supporting briefs. Defendants' motion for summary judgment was predicated upon grounds that Little was estopped from offering different facts in the state court proceedings from those submitted in the federal cause of action in which, despite a favorable verdict for Adams, neither Adams nor Little was awarded damages. The trial court granted summary judgment in favor of the defendants. Little appealed. We reverse and remand.
There have been no factual hearings or trial in this case. The following facts are contained in the pleadings submitted in both the federal and state actions.
In 1974, Alfred E. Little owned an unimproved parcel of realty in Mobile. During this period, Little was approached by Jad A. Wolf, who proposed that Little construct a building on the property according to Wolf's plans, to be leased to Pizza Wagon, Inc., a corporation organized by Wolf. In order to satisfy loan requirements for financing, Little incorporated as Moniac Corporation. After the loan was procured, Moniac was dissolved, with Little as its successor in interest.
In December of 1974, Moniac (i.e., Little) consummated a lease agreement with Pizza Wagon, Inc., the term of the lease to run from January 1, 1975, through December 31, 1984. Wolf, by written endorsement to the lease, personally guaranteed full compliance by Pizza Wagon, Inc., with all terms of the lease. The lease document contained, inter alia, the following clauses:
"16. Lessee shall not transfer or assign this Lease or sublease the premises or any part without the written consent of the Lessor, provided that the Lessor will not withhold its consent unreasonably.
"....
"32. Each and every transfer or assignment of this Lease, or any interest therein, and each and every subletting of said premises, or any part thereof, or any interest therein, shall be null and void, unless the written consent of the Lessor be first obtained thereto, and any violation hereof is agreed and understood to constitute a substantial and material breach of condition of this Lease, with all of the rights thereunto pertaining as in the case of default for any other cause hereunder."
On August 30, 1976, Pizza Wagon, Inc., and Wolf executed to Thomas A. Adams, Jr., an instrument entitled "Assignment of Leasehold Interest." According to Little, he had previously advised Wolf orally that, although he (Little) would not release Wolf by means of a new lease or otherwise, he would not object to Wolf's assigning or subletting to the parent company of Pasquale's Pizza franchises in Birmingham. Adams was not connected with the parent company, but was simply another franchisee.
Adams had possession of the premises until on or about March 15, 1979, at which time he executed an instrument, captioned "Agreement," with First Southeast Foods, Inc., under which Adams agreed to sell all of the assets utilized in the subject premises. On the same date, Adams executed to First Southeast Foods an "Assignment of Lease," which, according to Little, was done *1271 without his knowledge or consent and in direct contradiction to his wishes as expressed to Adams.
First Southeast Foods, Inc., closed the establishment on the premises and abandoned the property in August of 1979.
Appellant argues that Rule 56, Alabama Rules of Civil Procedure, requires that the court, when considering a motion for summary judgment, be presented with one or more of the following: (1) pleadings; (2) depositions; (3) answers to interrogatories; (4) admissions on file; and/or (5) affidavits. Accordingly, says the appellant, because of the lack of submission of such documentation to the trial court, a ruling that there existed no genuine issues of material fact and that the moving party (Adams) was entitled to judgment, as a matter of law, was totally erroneous. This argument is more extensively presented in appellant's brief as follows:
"In point of fact, there have been no depositions taken in this case; there were no answers to interrogatories, no interrogatories having been filed; no `admissions on file,' no motions for admissions having been filed; and no affidavits, none having been filed by either plaintiff or defendant either in the court of litigation of this case or in support of the motion for summary judgment.
"The `motion for summary judgment' does not comply with the requirements of the [Rule] upon which it is based. For this reason, if no other, the motion is to be denied.
"The rights as between Little and Pizza Wagon and Wolf were not litigated in the Federal action. Wolf and Pizza Wagon were not parties thereto. Little's rights as against Wolf and Pizza Wagon remain to be determined by the Circuit Court. The Federal action determined, if anything, only the rights as between Little and Adams, the second occupant.
"Wolf's brief written into the motion for summary judgment quotes passages from Little's Attorney's pretrial statement filed in the Federal Court action. These statements are not evidence in the Alabama Circuit Court, and do not constitute `pleadings' in this Court within the meaning of the Alabama Statute on Summary Judgments. Yet, by the very language of Defendant's Motion for Summary Judgment, the motion is based upon the pleadings filed by the Plaintiff in this action in the United States District Court of Alabama titled: Thomas W. Adams, Jr., Plaintiff, vs. Alfred E. Little.... Defendant's motion for Summary Judgment therefore is devoid and naked of any of the elements prescribed in Rule 56(C) enabling the Circuit Court to grant the motion; these pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. The motion is therefore not in conformance with the requirements of our [Rule] and ... is for that reason alone due to be denied."
Appellant's argument that the trial court's "summary judgment" was, in effect, a judgment on the pleadings, is essentially correct; but this, of itself, does not render such judgment reversible if the record shows that no genuine issue of material fact remained in the case and only a question of law was presented.
Such is not the case here. There are any number of factual issues outstanding. As Little points out, he swore, in opposition to the defendants' motion for summary judgment, that the federal action did not involve and did not decide whether Pizza Wagon and Jad A. Wolf, the original signatories to the lease, owed him money. The movants for summary judgment did not carry their burden. In fact, it was supported by an affidavit of the attorney who was one of the lawyers representing Adams in the federal litigation. He said only that the jury found that Adams owed Little no further obligation under the terms of the lease assigned to him. There has been no determination of whether Pizza Wagon and Wolf owe Little under the lease. Clearly, the trial court erred in granting summary judgment in their favor. They have as movants the burden of establishing that no genuine issue as to any material fact exists and that they are entitled to prevail as a *1272 matter of law. Campbell v. Southern Roof Deck Applicators, Inc., 406 So.2d 910 (Ala. 1981); Donald v. City National Bank, 295 Ala. 320, 329 So.2d 92 (1976).
Whether the defendants are entitled to prevail on their defenses of collateral estoppel or res judicata we cannot say. We can say that they cannot prevail on those defenses in the record before us. We have the unchallenged assertion that the issues raised by Little against them have never been decided in any court. He is entitled to one determination of his claims against them.
The judgment is reversed, and the cause is remanded.
REVERSED AND REMANDED.
All the Justices concur, except JONES, J., who concurs specially.
JONES, Justice (concurring specially).
I concur, without qualification, in the Court's holding that the movants failed to meet their burden of excluding all the genuine issues of fact essential to their entitlement to judgment as a matter of law with respect to their res judicata defense. I write specially to set forth what I perceive as the applicable legal principles invoked by this asserted affirmative defense.
Courts frequently use the term "res judicata" in an imprecise way, loosely denoting all the preclusive effects of prior judgments. See Restatement (Second) of Judgments, Introductory Note, Ch. 3 (Tent. Draft No. 1, 1973); Comment, Issue Preclusion in Alabama, 32 Ala.L.Rev. 500, n. 5 (1981). This Court has been criticized for lacking "terminological precision and consistency" in cases involving preclusion issues. Comment, Issue Preclusion in Alabama, supra. Although commentators themselves do not precisely agree on the exact categorical descriptions of preclusion concepts, a clear articulation of these concepts should facilitate the disposition of this case on remand.
The doctrine of res judicata, while actually embodying two basic concepts, usually refers to what commentators label "claim preclusion," while collateral estoppel, sometimes called estoppel by judgment, refers to "issue preclusion," which is a subset of the broader res judicata doctrine. See Semmel, Collateral Estoppel, Mutuality and Joinder of Parties, 68 Colum.L.Rev. 1457 (1968); Vestal, Preclusion/Res Judicata Variables: Parties, 50 Iowa L.Rev. 27-28 (1964); and Comment, Issue Preclusion in Alabama, supra. In deciding whether the doctrines of claim preclusion or issue preclusion apply, to sustain the summary judgment, we must ascertain: 1) What the requisite elements for assertion are; and 2) whether these elements exist, examining only the facts appearing of record.[1]
Because a plaintiff is generally regarded as having a separate claim or cause of action against each alleged wrongdoer, even when the cause of action asserted against each is identical, claim preclusion can be asserted only against a party, or one in privity therewith, to the original action.[2] *1273 Here, neither Pizza Wagon nor Wolf was a party, or in privity with a party, to the federal suit; therefore, the summary judgment should be sustained, if at all, based on collateral estoppel principles.
The Restatement of Judgments, § 68 (1942), declares that collateral estoppel, or issue preclusion, requires: 1) identity of issues, that is, the issue sought to be precluded must have been identical to that in the former action; 2) necessity of the issue, that is, the issue must have been necessary to the prior judgment; 3) actual litigation and determination of the issue in the previous suit; and 4) validity and finality of the judgment on the merits of the claim. See Comment, Issue Preclusion in Alabama, supra, at page 505. Generally, our case law comports with these requisite elements. Suggs v. Alabama Power Co., 271 Ala. 168, 123 So.2d 4 (1960) (questions of law must be same for preclusion to apply); Taylor v. Dew, 236 Ala. 624, 184 So. 184 (1938) (to disclose future contest on factual questions, questions must be identical); Interstate Elec. Co. v. Fidelity & Deposit Co., 228 Ala. 210, 153 So. 427 (1934) (issue must be essential to judgment); Gibbs v. TF & G Indus. Partners, 369 So.2d 544, 546 (Ala.1979) (only issues actually litigated and determined are entitled to preclusive effect); see, also, Wheeler v. First Alabama Bank, 364 So.2d 1190, 1199 (Ala.1978) (enumerates elements of "res judicata").
In addition to these requisites, the doctrine of collateral estoppel historically has required "mutuality" between the parties. This rule has been defined thusly:
"Simply stated, the rule of mutuality in collateral estoppel holds that unless both parties are bound by a prior judgment, neither may use the prior judgment as determinative of an issue in a second action." Semmel, Collateral Estoppel, Mutuality and Joinder of Parties, supra, at page 1459.
Application of the mutuality doctrine, then, means collateral estoppel applies in a second action only to a party, or one in privity therewith, because generally non-parties are not bound by a judgment. See Interstate Elec. Co. v. Fidelity & Deposit Co., 228 Ala. 210, 153 So. 427 (1934). In the past few decades, however, the rule of mutuality has been eroded by expansive judicial interpretations of privity, and by judicially created exceptions to the rule. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); Century 21 Preferred Properties, Inc. v. Alabama Real Estate Commission, 401 So.2d 764 (Ala. 1981); American Southern Ins. Co. v. Dime Taxi Service, Inc., 275 Ala. 51, 151 So.2d 783 (1963); Bernhard v. Bank of America Nat. Trust & Sav. Ass'n, 19 Cal.2d 807, 122 P.2d 892 (1942); Sosebee v. Alabama Farm Bureau Mut. Cas. Ins. Co., 56 Ala.App. 334, 336, 321 So.2d 676, 678 (Ala.Civ.App.1975); Teague v. Motes, 57 Ala.App. 609, 330 So.2d 434 (Ala.Civ.App.1976).
The modern trend, abandoning the strict mutuality requirement, has received mixed treatment by the courts based upon whether issue preclusion is raised offensively or defensively. Collateral estoppel has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy, and promoting judicial economy by preventing needless litigation. This underlying rationale provides a basis upon which many courts have sanctioned "defensive" use of collateral estoppel, while denying its "offensive" use. Although in both situations the party against whom estoppel is asserted has litigated and lost in an earlier action, justification for different treatment exists because:
"First, offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does. Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely `switching adversaries.'... Thus defensive collateral estoppel gives a plaintiff a strong incentive to join potential defendants in the first action if possible. Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. *1274 Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a `wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment.... Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action." Parklane Hosiery, 439 U.S. at 329-30, 99 S.Ct. at 650-651.
Although certain exceptions have been recognized, Alabama courts have persisted in strict adherence to the mutuality rule in most cases. Lewis v. Moss, supra; Suggs v. Ala. Power Co., supra; Sosebee v. Alabama Farm Bureau Mut. Cas. Ins. Co., supra. In my opinion, the time has come for us to recognize that adherence to strict mutuality, when collateral estoppel is asserted in a defensive manner, is contrary to the basic policy underlying the notion of preclusion. I see nothing inherently unfair in precluding a party, such as Little, from asserting a position on an identical issue contrary to the position taken in a former action, when that party has had a full and fair opportunity to litigate the disputed issue in a court of competent jurisdiction. Estoppel, in this situation, promotes judicial economy and efficiency by reducing litigation and encouraging the use of our liberal joinder and pleading rules.
Having discussed what I perceive as the requisite elements of the collateral estoppel doctrine, I now turn to the inquiry whether the doctrine applies to Little, thereby justifying the summary judgment rendered by the trial court. As the holding of the Court indicates, it does not. The record, including the pleadings in the federal action, does not provide a factual basis for the invocation of collateral estoppel principles upon which summary judgment can be grounded.
Although Little should be estopped from asserting any position on an issue in the state action contrary to a position taken on that identical issue in the federal proceedings, because of the different status of Pizza Wagon and Wolf, as assignors, and Adams, as assignee, in their respective relationships with Little, different issues may arise in the state and federal actions. Facts developed upon trial may disclose that privity of contract still exists between Pizza Wagon (and Wolf) and Little, which imposes contractual obligations upon the original contracting parties regardless of the validity of Wolf's assignment to Adams. Adams may have obligations arising from his privity of estate with Little, such as an obligation to pay rent, but this would not destroy the liability imposed by contract between Little and Pizza Wagon (and Wolf as surety), absent a novation or modification of their contract. In Little's counterclaim against Adams, he denied having released Pizza Wagon or Wolf from the lease obligations.
It is clear that issues exist in the state action that are not identical to those in the federal suit, that were not necessary to the federal judgment, and that were not actually litigated and determined in the federal suit. Because the elements necessary to invoke collateral estoppel are not present to sustain the summary judgment, the judgment is due to be reversed and the cause remanded for further proceedings.
NOTES
[1] We cannot judge the propriety of summary judgment based upon facts argued in brief, unless those facts appear of record. "Facts" contained in Appellees' brief were not before the trial judge for his consideration of the summary judgment motion, nor can such matters be considered on appeal.
[2] Professor Semmel states:

"An issue of claim preclusion arises only between parties or persons in privity with parties to both the first and second actions, because a plaintiff generally has been regarded as having a separate claim or cause of action against each separate obligor even though the subject matter of the claims is identical. However, other rules of law, procedural or substantive, may have effects similar to claim preclusion as to non-parties in the first action; for example, election of remedies or release of joint obligors by release of one obligor or by satisfaction of a judgment against one obligor. The principal area of litigation involving claim preclusion is the breadth of the term `claim' or `cause of action.' In one sense, claim preclusion is a rule of compulsory joinder; the plaintiff must assert in his first action all rights encompassed in the `claim' or `cause of action' and cannot maintain a second action after judgment in the first on any part of his claim, regardless of whether he recovers or not in the first action. The plaintiff is said to have violated the rule against `splitting his cause of action,'..." 68 Colum.Law Rev. at 1458.