Jerry McNeely and Deloris Rucker (who shall be referred to as "the McNeelys"), in their individual capacities and as administrators of the estate of Ruby Pearl McNeely ("the decedent"), appeal from a summary judgment entered by the Limestone County Circuit Court on their fraudulent-misrepresentation, fraudulent-suppression, negligence, wantonness, and conspiracy claims against Spry Funeral Home of Athens, Inc., and James B. Spry, Jr. (hereinafter collectively referred to as "Spry"). We reverse and remand.
The McNeelys filed their complaint in this action in July 1996, naming Spry, James B. Spry, Sr., and Gregory Spry (along with numerous fictitious parties) as defendants. The McNeelys sought damages based on alleged wrongful conduct of the defendants in connection with the funeral arrangements for the decedent, who was the McNeelys' mother.
Among other things, the McNeelys' complaint alleged that during negotiations concerning the nature and the price of the funeral and burial services to be performed, the McNeelys delivered the decedent's burial insurance policy and vault insurance policy to Gregory Spry, who then, they allege, undertook to explain the benefits inuring to the McNeelys as beneficiaries under the policies. At that time, they say, Gregory Spry stated that the decedent's burial policy was worth only a $50 credit toward the purchase of a casket, that the burial policy did not cover transportation of floral tributes, and that the vault policy did not cover all costs connected with obtaining an interment vault, all of which, the McNeelys say, resulted in their incurring funeral and burial expenses that they were not actually obligated to pay. The McNeelys alleged that Gregory Spry's statements were fraudulent misrepresentations, that his conduct constituted fraudulent suppression of material facts, that his conduct gave rise to a claim for intentional interference with contractual or business relations, that his conduct constituted negligence or wantonness, and that the defendants were engaged in a conspiracy to commit these torts. *Page 536 
The named defendants answered the complaint, and they later filed a third-party claim against the issuer of the decedent's burial and vault insurance policies, Mutual Savings Life Insurance Company ("Mutual Savings"), averring that the conduct alleged in the McNeelys' complaint was conduct performed "pursuant to" the decedent's insurance policies. Mutual Savings did not respond to the third-party complaint, and a default judgment was entered against Mutual Savings. Mutual Savings then moved to set aside the default judgment on the grounds that the McNeelys' claims were governed by the provisions of a class-action settlement entered in Gibson v. Mutual Savings Life Ins.Co., No. CV 84-179-J (Limestone County Circuit Court, Feb. 6, 1997), and that the Gibson settlement "may serve to effectively preclude a great many, if not all, of the issues or claims which are or may be sought to be asserted." The trial court set aside the default judgment against Mutual Savings. Spry and the other named defendants then amended their answer to assert that "all claims, causes of action, and liabilities . . . which have been or could have been asserted against [them] by the [McNeelys] are released pursuant to Paragraph L of the Order and Final Judgment which was entered . . . in [Gibson]." The third-party complaint was subsequently dismissed without prejudice, and Mutual Savings ceased to be a party.
On March 2, 1998, Spry, James B. Spry, Sr., and Gregory Spry filed a motion for a summary judgment, asserting, among other things, that the McNeelys' action against them was barred by the doctrine of res judicata, by the doctrine of collateral estoppel, and by the release in Gibson, that a summary judgment on all claims against James B. Spry, Sr., and Gregory Spry was due to be entered because the McNeelys had dealt only with James B. Spry, Jr.; and that the McNeelys' intentional-interference claims and their claims with respect to the vault policy were defective. The McNeelys filed a response in opposition, essentially conceding that a judgment in favor of James B. Spry, Sr., and Gregory Spry was due to be entered and that their intentional-interference and vault-policy claims were due to be dismissed; the trial court entered an order in accordance with this concession. However, they argued that neither the doctrine of res judicata, the doctrine of collateral estoppel, nor the language of the Gibson
settlement and judgment barred their remaining claims against Spry with respect to the burial policy.
The trial court entered a summary judgment in favor of Spry on May 8, 1998. In its judgment, the trial court concluded that each of the grounds asserted by Spry — res judicata, collateral estoppel, and release — supported the entry of a summary judgment in favor of Spry.
The McNeelys filed a timely notice of appeal to the Alabama Supreme Court. That court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
The McNeelys contend that the trial court incorrectly applied the doctrines of res judicata and collateral estoppel and misconstrued the Gibson release, and that material issues of fact remain to be resolved.
In determining whether a summary judgment is proper, this court is limited to reviewing the same evidence that was considered by the trial court when it granted the motion, and it must consider that evidence in a light most favorable to the nonmovant. Turnerv. Systems Fuel, Inc., 475 So.2d 539, 541-42 (Ala. 1985). "[A] trial court's ruling on a summary judgment motion is a nondiscretionary ruling, and no presumption of correctness attaches to that ruling; accordingly, our review of the evidence properly presented in the record is de novo." Stone v. SouthlandNat'l Ins. Corp., 589 So.2d 1289, 1291 (Ala. 1991).
In support of their motion for a summary judgment, the Spry defendants submitted various filings submitted by the parties inGibson, from which we can deduce the following pertinent facts.Gibson was not initially filed as a class action, but contained claims including fraud and breach of contract asserted by two beneficiaries of Mutual Savings burial policies against Mutual Savings and a funeral home in Athens, Alabama. In 1992, the complaint was amended to drop all claims except the breach-of-contract claim against Mutual Savings. However, the remaining *Page 537 
plaintiff then purported to assert that claim on behalf of a class of approximately 117,000 beneficiaries of Mutual Savings burial policies that had insured decedents who had died since August 17, 1978, wherein the beneficiaries had not used the casket "provided under the burial policy." The trial court certified this class of plaintiffs.
On May 30, 1996, the named plaintiff in Gibson, in her individual capacity and in her representative capacity, and Mutual Savings entered into a "stipulation and agreement of compromise and settlement," which was filed in the trial court. Among other things, this agreement defined two separate classes of plaintiffs, the "policyholder class," consisting of the owners of burial policies then in force, and the "beneficiary class," consisting of beneficiaries of policies as to which (i) the insured died and a claim was made under the Mutual Savings burial policy after August 17, 1978; (ii) a beneficiary presented the burial policy to a funeral director authorized by Mutual Savings for funeral services or merchandise; and (iii) the beneficiary paid to the funeral director an amount in addition to the amount paid by Mutual Savings for the funeral services or merchandise. The agreement provided for the issuance of shares of stock in Mutual Savings to the beneficiary class in exchange for the extinguishment of the claims of the class against Mutual Savings, and it contained the following express release of claims:
 "On the Effective Date of Settlement, Named Plaintiff, individually and on behalf of the Beneficiary Class and the Policyholder Class, and each Class Member and Representative, separately and severally, shall be deemed to have fully, finally, and forever released Defendant [Mutual Savings] and each of its past, present and or future parents, subsidiaries, affiliated and related entities and persons, officers, employees, directors, shareholders, agents, successors and assigns, separately and severally, of and from all claims, causes of action and liabilities (known or unknown) which have been or could be asserted by the Named Plaintiff or any Class Member, whether arising under state or federal statutory or common law, to the extent such claims, causes of action or liabilities arise from, are connected with, or are in any way based on or related to any allegation of breach of contract, fraud, misrepresentation, concealment, failure to disclose or other tortious conduct or breach of duty which occurred in whole or in part on or before the Effective Date of Settlement regarding any Burial Policy."
(Emphasis added.) The trial court in Gibson entered a judgment on February 6, 1997, approving this agreement and specifically incorporating the quoted release terms; it overruled all objections to the agreement and dismissed that action with prejudice.
The first issue raised by the parties is whether the Gibson
judgment is res judicata[1] as to the claims made by the McNeelys against Spry. The Alabama Supreme Court has outlined the legal principles applicable to the resolution of this issue:
 "The elements of res judicata [claim preclusion] are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits [or those in privity with them] substantially identical; and (4) same cause of action present in both suits. [Citation omitted.] If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action."
Campbell v. Campbell, 561 So.2d 1060, 1061 (Ala. 1990) (quoting Wheeler v. First Alabama Bank of Birmingham,364 So.2d 1190, *Page 538 
1199 (Ala. 1978)). However, "[i]f one element is missing, then the doctrine of res judicata will not bar the second action." BenettonS.p.A. v. Benedot, Inc, 642 So.2d 394, 399 (Ala. 1994)
After comparing the amended complaint, the parties' settlement agreement, and the judgment entered by the trial court in Gibson
with the complaint filed by the McNeelys in this action, we conclude that two elements of the doctrine of res judicata — the identity of parties and the identity of causes of action — are lacking. First, while the McNeelys were members of the beneficiary class of plaintiffs in Gibson, in addition to being the plaintiffs in this action, Spry was not sued in Gibson; the only defendant was Mutual Savings. While we acknowledge that a party asserting res judicata need only be inprivity with a party to the former action, we cannot agree with Spry that merely because Spry purportedly "follow[ed] those policies and guidelines of Mutual Savings which were at issue in the Gibson class action" that it is "substantially identical" to Mutual Savings. See Thomas v. Lynn, 620 So.2d 615, 616-17 (Ala. 1993) (where two landowners successfully defended fraud claims of two land purchasers in a previous action, alleged agents of the landowners who supposedly defrauded land purchasers held not to be in privity with the landowners so as to entitle the agents to assert a res-judicata bar to a subsequent fraud action).
More importantly, however, the claims asserted by the McNeelys in this case are not the same causes of action at issue in Gibson. The sole issue in Gibson was whether Mutual Savings complied with its duties to holders and beneficiaries of its burial policies arising out of those policies. In this case, the duties allegedly breached by Spry are its duties allegedlyimposed by law with respect to its customers (1) to tell the truth with respect to any credits to which its customers may be entitled; (2) to refrain from concealing material facts as to the nature of those credits, if any; and (3) to use due care in explaining the benefits inuring to its customers. While the duties of Mutual Savings to the McNeelys arose out of its contractual duty to pay valid claims against its insurance policies in good faith (cf. Chavers v. National Sec. Fire Cas.Co., 405 So.2d 1, 4-5 (Ala. 1981)), Spry's duties arose in the context of a relatianship between a provider of funeral and burial services and the purchasers thereof, and arose without regard to whether Mutual Savings fulfilled its duties to the McNeelys. Because the sources of the duties allegedly owed to the McNeelys differ, the Gibson claims do not have the identity to those asserted in this action that would be necessary for the judgment in Gibson to bar their assertion. Accord, Green v.Wedowee Hosp., 584 So.2d 1309, 1315-16 (Ala. 1991) (settlement of patient's malpractice action against allegedly negligent physician with respect to eye operation performed at a hospital did not bar subsequent fraud action against that hospital where the hospital's alleged concealments breached duties that differed from the physician's duty of due care). We thus conclude that the McNeelys' claims are not barred under the doctrine of res judicata.
Similarly, we conclude that the doctrine of collateral estoppel does not bar litigation of the McNeelys' claims in this case. "[The requirements for collateral estoppel to operate are (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment." Adams v. Carpenter,566 So.2d 236, 242 (Ala. 1990) (quoting Wheeler, 364 So.2d at 1199).[2] "Only issues actually decided in a former action are subject to collateral estoppel." Leverette ex rel. Gilmore v.Leverette, 479 So.2d 1229, 1237 (Ala. 1985) (emphasis added). InGibson, which was settled by agreement, no issues were litigatedor decided, and the parties in Gibson specifically disavowed any intent in their settlement agreement to decide any substantive issue with respect to *Page 539 
whether Mutual Savings was actually liable to the plaintiff classes in that case. Under the circumstances, no adversary litigation of any issues pertinent to the McNeelys' causes of action against Spry took place in Gibson, and the McNeelys are therefore not estopped from asserting that Spry is liable to them. AAA Equip. RentalInc. v. Bailey, 384 So.2d 107, 112 (Ala. 1980) (holding that a consent judgment between an injured party and several alleged joint tortfeasors did not estop one of the tortfeasors and its insurer, in a subsequent action against the other tortfeasors, from litigating the issue of the other tortfeasors' negligence).
Finally, we reject Spry's contention that the language of theGibson release (as incorporated into the trial court's judgment) bars the McNeelys' claims in this action. That release specifically refers to the "Defendant" (i.e., Mutual Savings), "its past, present and or future parents, subsidiaries, affiliated and related entities and persons, officers, employees, directors, shareholders, agents, successors and assigns." Pursuant to § 12-21-109, Ala. Code 1975, we must give effect to the language of the release "according to [its] terms and the intentions of the parties thereto," and those intentions are "to be ascertained as in the case of other written instruments."Steenhuis v. Holland, 217 Ala. 105, 107, 115 So. 2, 4 (1927).
Spry contends, without citation of authority, that it fits within the scope of the term "affiliated and related entities and persons." However, under the interpretive maxim noscitur asociis, which applies to written instruments, the meaning of this term is due to be determined by the words with which it is associated. Strickland v. General Motors Acceptance Corp.,578 So.2d 1275, 1277 (Ala. 1991). Here, the phrase "affiliated and related entities and persons" is located immediately after the words "parents," "subsidiaries," "officers," "employees," "directors," "shareholders," "agents," "successors," and "assigns." Each of those nearby terms connotes a closer connection to Mutual Savings than an incidental contractual relationship of insurer and funeral-services provider, such as is present here, and thus indicates that the parties in Gibson did not intend to release any claims against Spry.
Moreover, persuasive authority from other states holds that the term "affiliate" does not include parties with whom the principal releasee has an arm's-length contractual relationship. See McCallv. Cameron offshore Boats, Inc., 635 So.2d 263, 266-67
(La.Ct.App. 1994) (consent judgment between a corporation's sole shareholder and his wife releasing "affiliates" of shareholder did not release wife's tort claim against that corporation);Wyrembelski v. City of St. Clair Shores, 218 Mich. App. 125,128-31, 553 N.W.2d 651, 653-54 (1996) (document releasing claims of injured hockey player against "affiliates" of national organization that organized tournament at ice rink did not release claims of player against municipality that owned the ice rink; collecting authorities).
In light of these authorities, we cannot conclude that the release executed by the parties in Gibson indicates an intent to release any claims that the Gibson beneficiary class of plaintiffs (which includes the McNeelys) may have against funeral homes that provided burial and funeral services to the holders of Mutual Savings burial insurance policies. Thus, Spry was not entitled to a judgment as a matter of law on this basis.
Based upon the foregoing facts and authorities, we conclude that the grounds relied upon by the trial court do not support its entry of the summary judgment in favor of Spry on the McNeelys' claims arising from the decedent's Mutual Savings burial policy. We, therefore, reverse the summary judgment in favor of Spry and remand the cause for further proceedings.
REVERSED AND REMANDED.
YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.
[1] The late Justice Jones, in his special concurrence inLittle v. Pizza Wagon, 432 So.2d 1269 (Ala. 1983), noted the potential ambiguity in the unqualified use of the term "res judicata": "The doctrine of res judicata, while actually embodying two basic concepts, usually refers to what commentators label `claim preclusion,' while collateral estoppel, sometimes called estoppel by judgment, refers to `issue preclusion,' which is a subset of the broader res judicata doctrine." 432 So.2d at 1272. We use the term "res judicata" to refer specifically to the concept of claim preclusion, rather than to both claim preclusion and issue preclusion; the latter concept will be labeled "collateral estoppel" and will be discussed separately.
[2] In addition, (1) [t]he party claiming the benefit of the prior judgment as an estoppel against the adversarial party [must be] one who would have been prejudiced by a contrary decision in the previous case; and (2) the party against whom the estoppel by judgment is sought either [must be] an actual party in the previous case or [be] in privity with, or [be] a successor to the rights of, an actual party in the previous case." Pearson v. Cityof Hoover, 706 So.2d 1251, 1253 (Ala.Civ.App. 1997). *Page 540