PHILIP GIGUERE *vs.* MATHIAS MORRISETTE.

Kennebec.    Opinion, July 12, 1946.

96

*Jerome G. Daviau,* for plaintiff.

*F. Harold Dubord,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MURCHIE, TOMP-
KINS, FELLOWS, JJ.

FELLOWS, J. This is an action of trover brought by Philip
Giguere vs. Mathias Morrisette to recover the value of a portion
of a car of watermelons. At the conclusion of the evidence the
plaintiff moved for a directed verdict, which motion was denied.
The case comes to the Law Court on plaintiff's exceptions for re-
fusal to so direct.

It appears that on Friday, June 29, 1945, the First National
Stores received a shipment of a car of watermelons, which car ar-
rived at the Waterville freight yard. This car was to be unloaded
within three days from this date, in order for the First National
Stores to avoid demurrage charges. Upon arrival, the First Na-
tional Stores ascertained that many of the watermelons were
over-ripe and were spoiling. The defendant Morrisette, in the
trucking business, testified he was instructed by the First Na-
tional Stores to bring to its Waterville store such of the melons
as were saleable at the store, and to clean out the car by Monday.

There were about 1,200 melons in the car; and Morrisette, according to instructions, hauled to the store on Saturday 350 of the best melons. Morrisette believed that some of the remaining melons had a value, and offered to turn them over to the plaintiff on condition that the plaintiff would clean out the car not later than Monday night. The plaintiff denies that there was this condition in Morrisette's offer to transfer. The watermelons, which had any value, were to be sold by the plaintiff outside of Waterville, and he was to pay to the defendant 10¢ for each watermelon sold. The arrangement between the parties, whatever it may have been, was arrived at on Monday morning July 2, 1945.

The defendant placed his own padlock upon the freight car, and at the time of entering into the agreement with the plaintiff he gave to the plaintiff his key to this lock. The plaintiff testified that upon receiving the key he "went to the office of the Maine Central and fixed up about demurrage."

Late in the afternoon of Monday, July 2nd, the defendant learned that the plaintiff had not removed the melons and had not cleaned the car; and in order to comply with his agreement with the First National Stores, the defendant says he broke the padlock that he had placed on the railroad car, and took out 315 melons that appeared to have value. These 315 melons he put into his truck, and went to the home of the plaintiff, who then had the key to the padlock, and offered to deliver the melons to the plaintiff. The plaintiff refused to accept, and said that he would be at the home of defendant early the following morning. On July 3, 1945, the plaintiff failed to come to the home of the defendant, and the defendant again drove to the plaintiff's house and again offered to deliver the melons on his truck to the plaintiff. The plaintiff again refused to accept, and the defendant then sent his truck to Augusta, where these remaining melons were sold for $88.00. Employees of the defendant cleaned the car early in the morning of July 3rd. The plaintiff then brought this action of trover.

In support of his motion for a directed verdict the plaintiff claimed that there was no question of fact for the jury to pass upon; that he owned the melons, or at least had the right of possession to them, and that delivery of the key was delivery of the melons. The plaintiff also denied that he agreed to have them out of the car on Monday night, and for that reason told the railroad agent that he assumed any charges on the car. The plaintiff further claimed that "a conditional contract as testified to by the defendant did not privilege him to use force in the recaption of the goods," and that no demand was shown.

The defendant stated that his rights of disposal were given to the plaintiff on condition that the melons be removed from the car and the car cleaned on Monday; and that "at the time of the alleged conversion plaintiff neither had title to nor right of possession to the goods in issue."

The case was submitted to the jury and the jury returned a verdict for the defendant. The question for decision is whether the ruling of the Court in denying the motion, to direct a verdict for the plaintiff, was proper.

The common law action of trover was originally an action brought by a person who had lost personal property, and it was directed against the finder of the property. The ancient form of declaration, followed by the plaintiff in this case, alleges possession of the goods, their "loss," and the "finding" by the defendant. By a legal fiction it has become the appropriate form of action whenever a plaintiff seeks to recover damages from a defendant who deprives a plaintiff of his personal property, or who has converted a plaintiff's goods to his own use. The action lies for any unauthorized assumption or exercise of the right of ownership, or possession, over goods belonging to another, or to another who has the right of possession. Under our practice "the gist of the action is the invasion of the plaintiff's possession." *Webber* v. *McAvoy*, 117 Me., 326, 327, 104 A., 513.

The plaintiff must show that he had a general, or a special property in the goods, and the right to their possession at the time of

the alleged conversion. If there were conditions, or his right to possession depended on a condition, he must show a compliance with the condition. *Landry* v. *Mandelstam*, 109 Me., 376, 84 A., 642; *Patten* v. *Dennison*, 137 Me., 1, 14 A., 2d, 12. The case of *Davis* v. *Emery*, 61 Me., 140, 14 Am. Rep., 553, cited by the plaintiff, was where the plaintiff bought of the defendant a building standing on defendant's land, and paid for it. The building was to be moved by the plaintiff before a certain date. The Court held in the Davis case, that the neglect to remove would not constitute a forfeiture as there was no sale on condition. The price had been paid, and the defendant had only an action for damages.

Here the evidence shows that First National Stores had title to the melons. The only right that was given to defendant, after he delivered the best melons at the First National Store in Waterville, was the right, as he says, to unload the car, and to dispose of the spoiled and spoiling melons, before the First National Stores became liable to the railroad company for demurrage charges. The defendant says he offered to turn over to the plaintiff his right to possession on the same condition. The plaintiff took the key to the car, which was constructive delivery if so intended by the parties. *Vining* v. *Gilbreth*, 39 Me., 496. The plaintiff says that he did not then know, but he later learned from the defendant, that the defendant was expected to promptly clean the car. The plaintiff says that the condition was not stated to him in defendant's original offer when he locked the car and delivered the key. The plaintiff claims that as there was no agreement on his part to remove the melons that day, he assumed railroad charges.

There was a conflict of testimony as to whether there was or was not a condition; and whether, as between the parties to this action, the plaintiff was told of, or agreed to, any condition. The plaintiff could not relieve the primary obligation of First National Stores to the railroad company, for charges for delay in unloading the First National's melons, unless the railroad com-

pany in some manner, waived its rights against First National Stores. As between the parties to this action, and before removal of the melons from the car, there could be no such sale as is contemplated by the Sales Act, if the condition told by the defendant existed. R. S., Chap. 171, Sec. 65, 66. The plaintiff could not "buy" the melons of the defendant, at the time the key to the car was transferred, because the defendant then had no title. The defendant had the right of possession for the purpose of disposal if, or when, the melons were promptly removed from the car. There was no recaption when the defendant broke his own padlock, if the defendant's contentions were correct, and the plaintiff had not complied or intended to comply with his agreement, because he did not "retake" from the plaintiff. No demand was necessary, if the defendant's story is true, as the plaintiff never had either "possession or a special property" in the melons, and would not have, unless removed from the car that day. The right to possession, and the possession, on the part of the plaintiff, would depend on removal, and removal within the time specified, if, as claimed, the plaintiff agreed to the condition.

In the testimony presented at the trial in Superior Court, the parties agreed that the key to the padlock on the car was delivered by the defendant to the plaintiff after the car was locked on Monday morning; and it was not disputed that the defendant, later in the day, broke the lock and removed the melons. On other and important facts, relating to the necessity of prompt removal the evidence conflicts. The plaintiff, by his motion for a directed verdict, indicates that these two agreed facts alone authorize, as a matter of law, a verdict in his favor, without regard for any condition. To this view we cannot subscribe.

Was the understanding or agreement as claimed by the plaintiff or as claimed by defendant? As between the parties, did the plaintiff agree to, or know of, any condition that required immediate removal, when the defendant attempted to transfer his rights? If a condition existed, did the plaintiff comply? All such,

and similar questions bearing on the plaintiff's possession or right to possession, were questions for the jury.

It is firmly established in this State, that the Trial Court should direct a verdict for either party entitled to it, if the evidence raises a pure question of law, or if the evidence is such that reasonable minds would draw but one conclusion therefrom. If different inferences of fact may be drawn from the evidence, or if there is any substantial conflict relating to a material issue, a verdict should not be directed. It must be apparent that a contrary verdict could not be sustained. *Heath* v. *Jaquith,* 68 Me., 433; *Bank* v. *Sargent,* 85 Me., 349, 27 A., 192, 35 Am. St. Rep., 376; *Day* v. *B. & M. Railroad,* 97 Me., 528, 55 A., 420; *Wellington* v. *Corinna,* 104 Me., 252, 71 A., 889; *Drummond* v. *Pillsbury,* 130 Me., 406, 56 A., 806.

The motion for a directed verdict was properly denied.

*Exceptions overruled.*