Janice Strickland appeals from a judgment based on a directed verdict entered in favor of General Motors Acceptance Corporation ("GMAC") in an action arising from GMAC's repossession of her pickup truck. The question presented is whether the trial court correctly construed provisions in GMAC's retail installment sale contract that purportedly gave GMAC the right to repossess the truck.
In August 1988 Janice purchased a 1988 Chevrolet pickup truck from a dealership in Dothan. She planned to use the truck on her chicken farm. That purchase was financed by GMAC. Although the bill of sale from the dealership designated Janice as the sole owner of the truck, the certificate of title named both Janice and her husband, Gene, as the owners, because Gene co-signed Janice's note with GMAC. GMAC was listed on the certificate of title as a lienholder.
Gene had been convicted of a felony in 1987 but was not in custody at the time of the truck purchase because his appeal from that conviction was pending.[1] Gene's conviction was affirmed, and after the purchase he was ordered to report to the authorities. Part of the penalty assessed against him was a fine and court costs, a total indebtedness of $26,544. It appears that he was not able to pay that debt when he reported to the authorities, and, as a result, the circuit court issued a writ of execution ordering the Covington County Sheriff's Department to seize "any real or personal property" owned by Gene. Pursuant to that writ, the sheriff seized various items of personal property belonging to him, including the truck.[2]
GMAC learned that the truck had been seized, and on October 11, 1988, repossessed *Page 1276 
it while it was in the custody of the sheriff. A repossession report prepared by GMAC's agent stated that the reason for the repossession was not "because of [missed] payments," but because the truck had been "confiscated by [the] sheriff." The report also indicated that Janice was not notified of the repossession "immediately prior to repossession." After it repossessed the truck, GMAC sold it at an automobile dealer's auction.
Janice filed a complaint against GMAC, alleging that the corporation had breached its contract with her by repossessing the truck despite the fact that her payments were current; that it had converted the truck to its own use; and that it had disposed of the truck in a commercially unreasonable manner. GMAC filed a counterclaim, wherein it sought to recover the $898 balance on the note that it alleged was still outstanding after the sale of the truck. A trial was held, and at the close of the evidence the court directed a verdict in GMAC's favor on all of the counts in Janice's complaint. GMAC's counterclaim was dismissed without prejudice. Janice appeals from the directed verdict on her breach of contract and conversion claims, arguing that the court's construction of provisions in the retail installment sale contract was erroneous.[3]
At the outset, we note that the decision whether to grant a motion for a directed verdict is not within the discretion of the trial court. Thus, no presumption of correctness attends a ruling on such a motion. Zaharavich v. Clingerman,529 So.2d 978, 980 (Ala. 1988). This Court's function, when reviewing such a ruling, is to view the entire evidence, and all reasonable inferences that could be drawn therefrom, in a light most favorable to the nonmoving party. CaterpillarTractor Co. v. Ford, 406 So.2d 854 (Ala. 1981).
The language from the contract that gives rise to this dispute is reproduced below:
 "Ownership and Risk of Loss. . . . You agree not to remove the vehicle from the United States or Canada or to sell, rent, lease[,] or otherwise transfer any interest in the vehicle or this contract without the Creditor's written permission. You agree not to expose the vehicle to misuse or confiscation. . . ."
(Emphasis added.) A subsequent clause in the contract gave GMAC the right to repossess the truck if the buyer breached any agreement set out in the contract.
A representative of GMAC testified that the contract signed by Janice and Gene was a standard financing contract. He also testified that GMAC repossessed the truck because it considered the seizure of the truck by the sheriff to be "misuse." That testimony was consistent with the entries on GMAC's repossession report that indicated that the truck had been repossessed because of its confiscation by the sheriff.
When construing the contract, the trial judge held that the contract was an adhesion contract, i.e., a standard form contract that did not allow the buyer to bargain with GMAC regarding any of its terms. In addition, he held that because the contract had been drafted by GMAC, any ambiguities in it would be resolved against GMAC. Those holdings appear to be correct, see S. Williston, Williston on Contracts
§ 626, at 4:855-57 (3d ed. 1961), and have not been challenged by the parties to this appeal.
The trial judge went on to hold that despite the testimony from GMAC's witness, the phrase "misuse or confiscation" was ambiguous and could not serve as a basis for repossession in this case.[4] However, he then held that the phrase "You agree not to . . . sell, rent, lease or otherwise transfer any interest in the vehicle" was not ambiguous, and that the term "transfer" included involuntary transfers *Page 1277 
of interest, such as the seizure by the sheriff pursuant to the writ of execution. He held that because the contract made no distinction between voluntary and involuntary transfers, the sheriff's seizure of the truck was a "transfer of [an] interest in the vehicle" by Janice that constituted a sufficient breach of the contract to support GMAC's repossession.
After reviewing the contract, this Court concludes that the trial judge's construction conflicted with certain rules for construing contractual terms. First, although we agree that the words "sell," "rent," and "lease" are unambiguous, we do not agree that the phrase "otherwise transfer" is susceptible of only one meaning. For example, there have been many decisions holding that the term "transfer" connotes a voluntary change of title. See, e.g., Mahoney v. United States,831 F.2d 641 (6th Cir. 1987), cert. denied, 486 U.S. 1054,108 S.Ct. 2820, 100 L.Ed.2d 922 (1988); Major Realty Corp. v.C.I.R., 749 F.2d 1483 (11th Cir. 1985); National CityBank of New York v. Garzot, 83 F.2d 476 (1st Cir.), cert. denied sub nom., National City Bank of New York v.Fernandez, 299 U.S. 586, 57 S.Ct. 110, 81 L.Ed. 431
(1936); United States v. Firestone Tire Rubber Co.,518 F. Supp. 1021 (N.D. Ohio 1981); and Giguere v.Morrisette, 142 Me. 95, 48 A.2d 257 (1946). However, in the specialized area of bankruptcy law, the term encompasses both voluntary and involuntary changes in ownership or possession. In re Pouncey, 59 B.R. 615
(Bankr.M.D.Ala. 1986); 11 U.S.C. § 101(50) (1986). Because that phrase is ambiguous and because GMAC drafted the contract, the phrase must be construed against GMAC. United StatesFidelity Guar. Co. v. Mason Dulion Co., 274 Ala. 202,145 So.2d 711 (1962). This rule of construction is not harsh, "[s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning than one with whom he is dealing." Williston, § 621 at 4:760. By construing the term "otherwise transfer" to include involuntary, as well as voluntary, transfers, the court construed the phrase most strongly against Janice.
Additionally, courts do not favor constructions of contract terms or agreements that lead to a forfeiture. NorthCarolina Mut. Life Ins. Co. v. Terrell, 227 Ala. 410,150 So. 318 (1933). A contract should be given a reasonable meaning that is equitable to the parties and that does not give one of them an unfair or unreasonable advantage over the other. Williston, § 620 at 4:751.
Finally, by construing the phrase "otherwise transfer" to include involuntary transfers, the court ignored the maximnoscitur a sociis, i.e., the principle that the meaning of words may be indicated or controlled by those with which they are associated. Nettles v. Lichtman,228 Ala. 52, 152 So. 450 (1934). The inclusion of the prohibition against "otherwise transfer[ring]" the vehicle in the same sentence with the prohibitions against the plainly voluntary actions of "sell[ing], rent[ing], [or] leas[ing]," gives rise to the reasonable construction that that phrase prohibits only voluntary "transfers."
Reviewing Janice's contract with GMAC with these rules of construction in mind, this Court concludes that the trial court's construction was erroneous. For the reasons stated, we hold that the trial court's directed verdict for GMAC on Janice's breach of contract claim was error. Because the court's subsequent entry of a directed verdict on her conversion claim was predicated on its erroneous finding that the repossession was authorized by the terms of the contract, the judgment as to that claim is also due to be reversed. The judgment is reversed and the cause is remanded. We point out, however, that our decision is based solely on the issues presented in the parties' briefs as they relate to the trial judge's stated reasons for the directed verdict.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] Janice had not been implicated in Gene's criminal conduct.
[2] Janice has not alleged that the sheriff's seizure of the truck was improper.
[3] Janice has not appealed the judgment against her claim that GMAC sold the truck in a commercially unreasonable manner.
[4] The trial judge stated that the term "misuse" suggested physical abuse, and that the term "confiscation" probably applied only in cases where the vehicle had been seized because it had been used in, or was the fruit of, criminal activities. *Page 1278