886 So.2d 38 (2004)
SOUTHTRUST BANK
v.
COPELAND ONE, L.L.C., and Phenix Girard Bank.
1020727.
Supreme Court of Alabama.
September 5, 2003.
Opinion Overruling Rehearing March 12, 2004.
*39 James J. Robinson and Jason D. Woodard of Burr & Forman, LLP, Birmingham; and Robert T. Meadows III of Capell & Howard, P.C., Opelika, for appellant.
Wayne T. Johnson, Phenix City, for appellee Copeland One, LLC.
J. Tutt Barrett of Dean & Barrett, Opelika, for appellee Phenix-Girard Bank.
HOUSTON, Justice.
This case involves the interpretation of a provision in a lease between SouthTrust Bank ("SouthTrust") and Copeland One, L.L.C. ("Copeland One"). The lease, drafted by SouthTrust, provided for a freestanding automated teller machine ("ATM") to be operated by SouthTrust on property owned by Copeland One (the "ATM lease"). The trial court determined that the provision in the ATM lease was ambiguous and entered a judgment for Copeland One. We affirm.

Facts and Procedural History
On April 1, 1983, SouthTrust entered into a lease with Octoco, Inc., pursuant to which SouthTrust leased from Octoco a building located on a parcel of property in Phenix City known as the Smiths Station Plaza Shopping Center ("Smiths Station Plaza") to use as a branch bank (the "branch lease"). The branch lease expired on December 15, 1992, and was renewed for an additional 10-year period, which was to expire on December 15, 2002.
On January 10, 1997, SouthTrust and Octoco entered into the ATM lease, a lease wholly separate from the branch lease, pursuant to which SouthTrust would operate a freestanding ATM at Smiths Station Plaza located several hundred yards from the building housing the branch bank. The ATM lease was drafted by SouthTrust and was SouthTrust's standard lease for freestanding ATMs. If SouthTrust exercises all of its options to renew the ATM lease, it will not expire until February 2008. The ATM lease provides that SouthTrust has the unilateral and sole authority to renew the ATM lease; Octoco does not have the option to cancel the ATM lease or to object to its renewal.
Section 5 of the ATM lease is entitled "Use of Premises." Section 5.3 of the ATM lease reads:
"Exclusive ATM or Bank. Tenant [SouthTrust] shall have the exclusive right during the term of this lease and any renewals to operate an ATM or any other type of banking facility on the Property.[[1]] This exclusive use provision may be enforced in an action to enjoin any use in violation of this provision."
(Emphasis added.) (This lease provision is hereinafter referred to as "the exclusive-use provision.")
On April 23, 1997, Octoco sold Smiths Station Plaza to Big Buy Foods, Inc. As *40 part of the sale, Octoco assigned all leases related to Smiths Station Plaza, including the branch lease and the ATM lease, to Big Buy Foods. Each month SouthTrust issued two checks to Big Buy Foods, one for the branch lease and one for the ATM lease.
Early in 2002, SouthTrust and Big Buy Foods began negotiations for the renewal of the branch lease. Those negotiations continued until SouthTrust learned that Big Buy Foods had agreed to sell Smiths Station Plaza to Copeland One. SouthTrust contacted Fred Copeland, the majority owner of Copeland One, regarding the renewal of the branch lease, but Mr. Copeland refused to discuss the matter until after the sale of Smiths Station Plaza to Copeland One had closed.
The sale of Smiths Station Plaza by Big Buy Foods to Copeland One closed on August 12, 2002. As part of the sale, Big Buy Foods assigned all leases for property in Smiths Station Plaza, including the branch lease and the ATM lease, to Copeland One.
For approximately a week after the sale, SouthTrust and Copeland One negotiated for the renewal of the branch lease. During that time, Copeland One received an offer from Phenix Girard Bank ("PGB") to lease the branch bank building for a rental amount higher than the amount that SouthTrust was offering. On August 19, 2002, Copeland One entered into a lease with PGB for the use of the branch bank building after the expiration of the branch lease (the "PGB lease").
After signing the PGB lease, Copeland One informed SouthTrust that it would have to vacate the branch bank building on December 15, 2002, at the expiration of its lease. SouthTrust vacated the building as directed and reopened in a new location approximately one block from the branch bank building.
After it opened its branch bank at the new location, SouthTrust notified Copeland One that, pursuant to the exclusive-use provision of the ATM lease, SouthTrust had the exclusive right to operate a branch bank at Smiths Station Plaza. On September 5, 2002, Copeland One filed a complaint seeking a judgment declaring the parties' rights under the ATM lease. SouthTrust filed an answer and a counterclaim; the counterclaim sought an injunction prohibiting PGB, or any other bank, from conducting banking operations at Smiths Station Plaza. In its counterclaim, SouthTrust contended that the exclusive-use provision of the ATM lease gave SouthTrust "the exclusive right to conduct banking operations on the Property. Copeland One is therefore prohibited from leasing any portion of the Property to any entity that would conduct any type of banking operations on the Property." Both Copeland One and SouthTrust requested that PGB be added to the declaratory-judgment action as a real party in interest, and the court granted that request.
A three-day bench trial at which ore tenus evidence was presented was held beginning on December 12, 2002. At the conclusion of the bench trial, the trial court ordered the parties to submit written briefs. On January 23, 2003, the trial court entered a judgment in favor of Copeland One and PGB and against SouthTrust. The entirety of the trial court's findings are as follows:
"The above-styled case has been submitted upon the pleadings herein, evidence heard ore tenus by this Court, and the briefs and arguments of the parties. After hearing the evidence presented and carefully observing the demeanor of each witness as each testified, the Court is of the opinion that this case should be decided in favor of Copeland *41 One, L.L.C. and against SouthTrust Bank. The Court further finds as follows:
"(a) The Court has jurisdiction of this case and the parties.
"(b) A justiciable controversy exists between the parties.
"(c) The document referred to in this case as the `ATM lease' is ambiguous, and as such, must be construed against the party drafting it, SouthTrust Bank.

"It is, therefore, ADJUDGED AND ORDERED:
"1. Judgment is entered in favor of Copeland One, L.L.C. and [PGB] on the counterclaim and claims of SouthTrust Bank.
"2. Copeland One, L.L.C. may enter into an agreement with [PGB] or any person or entity for the use as a branch bank of the building referred to in this case as the `branch bank building.'"
(Emphasis added.) In its holding, the trial court did not indicate the specific provision or provisions of the ATM lease it found ambiguous. This appeal followed.

Analysis
This Court set out the applicable standard for reviewing a trial court's determination that a contract is ambiguous in Winkleblack v. Murphy, 811 So.2d 521, 525-26 (Ala.2001):
"The question whether a contract is ambiguous is for a court to decide. State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293 (Ala.1999). As long as the contractual terms are clear and unambiguous, questions of their legal effect are questions of law. Commercial Credit Corp. v. Leggett, 744 So.2d 890 (Ala.1999). Thus, we apply a de novo review to a trial court's determination of whether a contract is ambiguous and to a trial court's determination of the legal effect of an unambiguous contract term.
"Once the trial court determines that an ambiguity exists in a contract, the meaning of that contract is to be determined by the trier of fact. Employees' Benefit Ass'n v. Grissett, 732 So.2d 968 (Ala.1998); Glenlakes Realty Co. v. Norwood, 721 So.2d 174 (Ala.1998). In this case, the trier of fact was the trial court, and the court heard ore tenus evidence.
"`Where ore tenus evidence is presented to the trial court in a nonjury case, a judgment based on that evidence is presumed to be correct and will not be disturbed on appeal unless a consideration of the evidence and all reasonable inferences therefrom reveals that the judgment is plainly and palpably erroneous or manifestly unjust.'
"Bertolla v. Bill, 774 So.2d 497, 503 (Ala.1999)(quoted in Redden v. State, 804 So.2d 196 (Ala.2001))."
In this case, the trial court was the trier of fact and heard ore tenus evidence. Following the standard set out in Winkleblack, supra, we must engage in a two-part analysis. First, we must review de novo the trial court's determination that the ATM lease is ambiguous. Second, if we find (as we do) that the ATM lease is ambiguous, we must then determine whether the trial court's holding that Copeland One may enter into a lease agreement with PGB for the use of the branch bank building was "plainly and palpably erroneous or manifestly unjust."

Ambiguity of the ATM Lease
This controversy circulates around the language in the exclusive-use provision of the ATM lease, which states, in pertinent part, that "[SouthTrust] shall have the exclusive right during the term of this lease and any renewals to operate an ATM or any other type of banking facility on the *42 Property." (Emphasis added.) SouthTrust argues that the trial court erred in holding that the ATM lease is ambiguous and thus that it must be construed against SouthTrust, as the drafter of the ATM lease. According to SouthTrust, the language in the exclusive-use provision is clear and it gives SouthTrust the sole right to operate a bank at Smiths Station Plaza during the period the ATM lease is in effect.
In briefs submitted to this Court, the parties focus on the term "banking facility" as that term is used in the ATM lease.[2] SouthTrust argues that the meaning of that term is clear and unambiguous; Copeland One and PGB argue that it is ambiguous. The ATM lease does not define the term "banking facility," but, as SouthTrust correctly points out, an inherent ambiguity is not created merely by the use in a document of an undefined word. See Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 692 (Ala.2001). The term "banking facility" as used in the ATM lease should be given its "ordinary, plain, and natural meaning." See Winkleblack, 811 So.2d at 527 (quoting Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000)). We agree with SouthTrust that the term "banking facility" as used in the ATM lease should be interpreted to mean "any type of building or structure from which banking operations are conducted." (SouthTrust's brief at 17.) The branch bank building located at Smiths Station Plaza is clearly included within this definition.
We do not find that the ATM lease is ambiguous based on the use of the term "banking facility"; rather, we find that the use of the word "or" is the cause of the ambiguity.[3]
"`Every use of "and" or "or" as a conjunction involves some risk of ambiguity.' Maurice B. Kirk, Legal Drafting: The Ambiguity of `And' and `Or,' 2 Texas Tech L.Rev. 235, 253 (1971)(emphasis in original). Thus, in the main text of Words and Phrases (1953)  excluding pocket parts  the word `and' takes up 61 pages of digested cases interpreting it in myriad ways, and the word `or' takes up another 84 pages of digested cases interpreting it in an equally broad array of senses. Virtually every book on drafting legal documents contains a section on the ambiguity of the two words.
"Authorities agree ... that or has an inclusive as well as an exclusive sense. Hence:
"....
"The `inclusive or': A or B, or both.
"The `exclusive or': A or B, but not both."
Bryan A. Garner, A Dictionary of Modern Legal Usage 624 (2d ed.1995).
Following the above reasoning, one could read the "or" in the exclusive-use provision of the ATM lease as being inclusive or exclusive. The provision in the ATM lease stating that SouthTrust "shall have the exclusive right during the term of this lease and any renewals to operate an ATM or any other type of banking facility" at Smiths Station Plaza could be construed to mean either 1) that SouthTrust has the exclusive right during the term of the ATM lease to operate an ATM at Smiths Station Plaza or the exclusive right to operate *43 any other type of banking facility at Smiths Station Plaza, or the exclusive right to operate both an ATM and any other type of banking facility at Smiths Station Plaza; or 2) that SouthTrust has the exclusive right during the term of the ATM lease to operate an ATM at Smiths Station Plaza or to operate any other type of banking facility at Smiths Station Plaza, but it does not have the exclusive right to operate both an ATM and any other type of banking facility at Smiths Station Plaza.
The above two readings of the exclusive-use provision, one reading the "or" as inclusive and the other reading the "or" as exclusive, render completely different meanings. "When any aspect of a contract is capable of more than one meaning, it is ambiguous." Voyager Life Ins. Co. v. Whitson, 703 So.2d 944, 948 (Ala.1997); see also Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314, 317 (Ala.1993); Cannon v. State Farm Mut. Auto. Ins. Co., 590 So.2d 191, 194 (Ala.1991). Therefore, because the exclusive-use provision is susceptible of two interpretations, the ATM lease is ambiguous.

Construction of the ATM Lease
It is a well-established rule of contract construction that any ambiguity in a contract must be construed against the drafter of the contract. Ex parte Palm Harbor Homes, Inc., 798 So.2d 656, 661 (Ala.2001); Birmingham News Co. v. Lynch, 797 So.2d 440, 443 (Ala.2001); Brewbaker Motors, Inc. v. Belser, 776 So.2d 110, 112 (Ala.2000); Strickland v. General Motors Acceptance Corp., 578 So.2d 1275, 1277 (Ala.1991); Lilley v. Gonzales, 417 So.2d 161, 163 (Ala.1982); Alabama-Tennessee Natural Gas Co. v. City of Huntsville, 275 Ala. 184, 153 So.2d 619, 628 (1963). Because SouthTrust drafted the ATM lease, any ambiguity in that lease must be construed against it. Under this rule of construction, the "or" in the exclusive-use provision should be considered exclusive, acting as a disjunctive conjunction, rather than inclusive.
Interpreting the ATM lease most strongly against the drafter, SouthTrust, we construe the ambiguous exclusive-use provision to mean that SouthTrust has the exclusive right during the term of the ATM lease and any renewals of the ATM lease to operate an ATM at Smiths Station Plaza or that SouthTrust has the exclusive right during the term of the ATM lease and any renewals of the ATM lease to operate any other type of banking facility at Smiths Station Plaza; it does not mean, however, that SouthTrust has the exclusive right during the term of the ATM lease and any renewals of the ATM lease to operate both an ATM and any other type of banking facility at Smiths Station Plaza. This construction allows Copeland One to lease the branch bank building to another bank while the ATM lease is in effect.
Therefore, the trial court's holding that Copeland One properly entered into a lease pursuant to which PGB would conduct banking activities in the branch bank building at Smiths Station Plaza was not plainly or palpably erroneous. We affirm.
AFFIRMED.
LYONS, BROWN, JOHNSTONE, and WOODALL, JJ., concur.

On Application for Rehearing
PER CURIAM.
Matters not argued in an appellant's brief on original submission cannot be raised for the first time on application for rehearing. As this Court recently recapitulated this rule:
"[Respondent] raises [this argument] for the first time in its application for rehearing.... `We can not sanction the *44 practice of bringing up new questions for the first time, in an ex parte application for rehearing.' Robinson v. Allison, 97 Ala. 596, 604, 12 So. 604 (1893) (on application for rehearing). `We cannot sanction the practice of bringing up new questions for the first time in application for rehearing.' Kirkland v. Kirkland, 281 Ala. 42, 49, 198 So.2d 771, 777 (1967) (on application for rehearing). `We cannot sanction the practice of bringing up new questions for the first time in applications for rehearing.' Cole v. Cole Tomato Sales, Inc., 293 Ala. 731, 735, 310 So.2d 210, 212 (1975) (on application for rehearing). `New supporting arguments presented for the first time on rehearing generally will not be considered.' Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala.1985) (on application for rehearing). `[T]his argument was raised for the first time on application for rehearing, and therefore will not be considered.' Schulte v. Smith, 708 So.2d 138, 141 n. 2 (Ala.1997) (on application for rehearing)."
Ex parte Lovejoy, 790 So.2d 933, 938-39 (Ala.2000).
This principle precludes us from considering, on the merits, the argument SouthTrust now makes on application for rehearing concerning the proper construction and resolution, contrary to the one we adopted in our original opinion of September 5, 2003, of the ambiguity we found to attend the use of "or" in the phrase "an ATM or any other type of banking facility on the property."
In the post-hearing "brief and closing argument" Copeland One filed with the trial court, it argued that the lease was ambiguous because, among other things, "[s]ection 5.3 contains the disjunctive `or' in the phrase ATM or any other banking facility." Later in that brief, Copeland One stated the well-established principle that a contract is ambiguous when one or more of its terms is reasonably susceptible to more than one interpretation, and argued that because the use of the disjunctive "or" in the phrase "ATM or any other type of banking facility" was ambiguous, the ambiguity must be construed against SouthTrust, as the drafter of the lease.
In its responsive trial brief, SouthTrust forwent any argument about proper resolution of the ambiguity Copeland One claimed the use of the word "or" created, taking the position instead that there was "nothing ambiguous about this phrase." SouthTrust, in its "Appellant's Opening Brief" to this Court never argued or even took notice of the ambiguity created by the use of the word "or." Rather, SouthTrust addressed ambiguity versus unambiguity only in the context of the phrase "banking facility." In its brief on appeal, Copeland One argued again its contention that the use of "or" created ambiguity. In its reply brief SouthTrust likewise again argued only that "[t]here is nothing ambiguous about this phrase...." Thus, before the issuance of our original opinion, SouthTrust argued only that the "or" component of the phrase created no ambiguity.
Accordingly, we will not entertain the new position it argues for the first time on rehearing concerning the proper construction to be accorded the ambiguity created by the use of the word "or."
APPLICATION OVERRULED.
HOUSTON, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
SEE and LYONS, JJ., dissent.
SEE, Justice (dissenting).
The provision at issue in this case, Section 5.3 of the ATM lease, states, in relevant part:
"Exclusive ATM or Bank. Tenant [SouthTrust] shall have the exclusive *45 right during the term of this lease and any renewals to operate an ATM or any other type of banking facility on the Property."
SouthTrust argued below and in its initial brief to this Court that the provision is unambiguous. The provision is unambiguous: its clear intent is that no one but SouthTrust may operate an ATM or any other type of banking facility on the property.[1] Therefore, I respectfully dissent.
LYONS, Justice (dissenting).
When this Court released its original opinion in this case, I concurred. Upon further consideration of that opinion, I believe I should have dissented. I would, therefore, grant the application for rehearing and I must dissent from the overruling of the application for rehearing.
SouthTrust Bank's standard ATM lease contains a paragraph with the introductory phrase "Exclusive ATM or Bank." That paragraph provides that SouthTrust Bank has the exclusive right to operate an ATM or any type of banking facility at the location of the ATM that is the subject of the lease. I would find that the lease unambiguously gives SouthTrust Bank the exclusive right to operate both an ATM and any other banking facility at that location.
The operation of an ATM is the sole reason for executing such a lease. If, as the Court's opinion holds, this paragraph confers upon SouthTrust Bank the option to elect between an exclusive right to operate an ATM or an exclusive right to operate a bank, but not both, the inevitable result, upon the execution of the ATM lease, is the election of the exclusive right to operate an ATM, thereby making the option of the exclusive right to operate a banking facility a practical impossibility. I would reverse the trial court's judgment, which was based on its finding that the lease is ambiguous, especially in light of the fact that SouthTrust Bank was already operating the only bank on the property when the ATM lease was executed.
Under the logic of the original opinion, I must assume that Phenix Girard Bank will not be allowed to have an ATM at its banking facility because SouthTrust Bank, pursuant to its ATM lease, has that exclusive right. Such an anomalous result underscores the bizarre consequences of the original opinion's treatment of the ATM lease.
NOTES
[1] The term "Property" is defined and described in the ATM lease as Smiths Station Plaza.
[2] Following the bench trial, the trial court requested that the parties brief the issue of what is meant by the term "banking facility" as that term is used in the ATM lease.
[3] This Court can affirm the trial court's judgment for any reason, even a reason not given by the trial court. Cutler v. Orkin Exterminating Co., 770 So.2d 67, 71 (Ala.2000); Ex parte City of Fairhope, 739 So.2d 35, 39 (Ala.1999).
[1] I understand that language itself has sufficient intrinsic ambiguity that an argument, compellingly and persistently made, when dwelt upon can cause one to doubt the clarity of anything; but there is no real doubt as to the intention of the language used here. See Garrett & Assocs. Real Estate, Inc. v. Colonial Realty Ltd., 840 So.2d 905, 907 (Ala.Civ.App.2002) ("We recognize that '"[t]he mere fact that adverse parties contend for different constructions does not in itself force the conclusion that the disputed language is ambiguous."'") (quoting Ex parte Awtrey Realty Co., 827 So.2d 104, 107 (Ala.2001)), and Southland Quality Homes, Inc. v. Williams, 781 So.2d 949, 953 (2000), citing Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564, 570 (Ala.1999) ("A court may not twist the plain meaning of the terms in a contract to create an ambiguity under the guise of interpretation.").