Filed 9/9/25;  Modified and Certified for Partial Pub. 10/8/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TRICIA GALARSA,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>DOLGEN CALIFORNIA, LLC,<br><br>  Defendant and Appellant. | F089004<br><br>(Super. Ct. No. BCV19-102504)<br><br>**OPINION** |
| DOLGEN CALIFORNIA, LLC,<br><br>  Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>  Respondent;<br><br>TRICIA GALARSA,<br><br>  Real Party in Interest. | F089171 |

APPEAL from a judgment of the Superior Court of Kern County.  ORIGINAL PROCEEDINGS, petition for writ of mandate.  Thomas S. Clark, Judge.

McGuirewoods, Sabrina A. Beldner, David Szwarcsztejn and Matthew A. Fitzgerald for Defendant, Petitioner and Appellant.

The Bainer Law Firm, Matthew R. Bainer; Clarkson Law Firm, Glenn A. Danas and Brent A. Robinson for Plaintiff, Real Party in Interest and Respondent.

-ooOoo-

In this consolidated appeal and writ proceeding, we address two questions involving the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code,[1] § 2698 et seq.). The first question is whether the version of PAGA in effect from mid-2016 to mid-2024 authorized an aggrieved employee to bring a PAGA action that seeks to recover civil penalties imposed for Labor Code violations suffered *only* by other employees.[2] Such lawsuits are sometimes referred to as "headless" PAGA actions because the plaintiff employee has chosen not to pursue civil penalties for violations he or she suffered personally. (*CRST Expedited, Inc. v. Superior Court* (2025) 112 Cal.App.5th 872, 882 (*CRST Expedited*).) We again conclude such PAGA actions were allowed. (*Ibid*.)

The second question arises only if headless PAGA actions were allowed and involves standing to pursue the PAGA action as the representative of the Labor and Workforce Development Agency (LWDA). To have standing, a PAGA plaintiff must be an "aggrieved employee." (See § 2699, former subd. (c) [definition of aggrieved employee].) The question is whether the plaintiff employee's status as aggrieved

---

[1] Unlabeled statutory references are to the Labor Code.

[2] This question is pending before the California Supreme Court in *Leeper v. Shipt, Inc.* (2024) 107 Cal.App.5th 1001, review granted April 16, 2025, S289305. (See *Williams v. Alacrity Solutions Group, LLC* (2025) 110 Cal.App.5th 932, review granted July 9, 2025, S291199; *Rodriguez v. Packers Sanitation Services Ltd., LLC* (2025) 109 Cal.App.5th 69, review granted May 14, 2025, S290182.) In *Leeper*, the court interpreted the current version of PAGA despite the complaint having been filed in March 2024. Based on that filing date, we presume the California Supreme Court will analyze the former version of PAGA when it decides *Leeper*.

2.

employee is a separate dispute that must be resolved in arbitration before the headless PAGA action proceeds in court.  This question does not appear to have been decided by a California appellate court since the United States Supreme Court decided *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*).**3**  We conclude the parties' agreement to arbitrate certain disputes does not encompass the issue of plaintiff's status as an aggrieved employee because that dispute is one the plaintiff's principal, Labor and Workforce Development Agency (LWDA), has against the employer.

We therefore deny the employer's petition for a writ of mandate challenging the trial court's order overruling its demurrer to the headless PAGA action and affirm the order denying the employer's motion to compel arbitration of the standing issue.

## TERMINOLOGY

The singular "PAGA claim" refers to a claim (1) asserted against an employer by an aggrieved employee who is an authorized representative of the LWDA and (2) seeks to recover a civil penalty imposed by PAGA for a single Labor Code violation.  (See § 2699, former subds. (a), (c) [definition of aggrieved employee].)  For purposes of this opinion, there are two types of PAGA claims.

"Type A/individual PAGA claim" refers to a *PAGA claim* seeking a civil penalty based on a Labor Code violation suffered *by the plaintiff*.  (See *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 648 (*Galarsa*) ["Type A" claim defined].)

---

**3**　　Pre-*Viking River* case law rejected the contention that the issue of a plaintiff's status as an "aggrieved employee" must first be arbitrated before the plaintiff could pursue a PAGA action in court.  (*Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 995.)  In *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, the court stated that a "petitioner cannot be compelled to submit any portion of [the] PAGA claim to arbitration, including whether he was an 'aggrieved employee.' " (*Id.* at p. 649.)  In *Hernandez v. Ross Stores, Inc.* (2016) 7 Cal.App.5th 171, the court concluded the "determination of whether the party bringing the PAGA action is an aggrieved party ... should not be decided separately by arbitration."  (*Id.* at p. 178.)

3.

"Type O/nonindividual PAGA claim" refers to a *PAGA claim* seeking a civil penalty assessed on a Labor Code violation suffered by an employee *other than the plaintiff.* (See *Galarsa, supra*, 88 Cal.App.5th at p. 649 ["Type O" claim defined].)[4]

The terms "Type A/individual PAGA claim" and "Type O/nonindividual PAGA claim" are a combination of the labels used in our earlier opinion in this case and our recent decision in *CRST Expedited*. (See *CRST Expedited, supra*, 112 Cal.App.5th at pp. 891–893 [Part I.A., Definitions].) The combined labels are used to provide some continuity of terminology for the parties, the trial court, and readers of *Galarsa*.

## FACTS

In February 2018, plaintiff Tricia Galarsa sued her former employer, Dolgen California, LLC (Dollar General), to recover civil penalties under PAGA for various Labor Code violations suffered by her or by other employees. The facts and procedural history set forth in *Galarsa, supra*, 88 Cal.App.5th 639 are known by the parties, their attorneys, and the trial court and are readily available to the public. Thus, we do not recount them here. Relevant provisions of the 2016 arbitration agreement are set forth in part II.B., *post*.

## PROCEEDINGS

After *Galarsa, supra*, 88 Cal.App.5th 639, was issued, the California Supreme Court granted Dollar General's petition for review and deferred briefing pending its decision in *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*). In September 2023, after *Adolph* was issued, the Supreme Court dismissed the petition for review. As a result, the clerk of this court issued a remittitur and this matter was returned to the trial court to implement our decision in *Galarsa, supra*, 88 Cal.App.5th 639.

---

[4] The civil penalty recovered on either type of *PAGA claim* is distributed 75 percent to the LWDA and 25 percent to the employee aggrieved by the violation. (§ 2699, former subd. (i).)

4.

That decision partially reversed the order denying Dollar General's motion to compel arbitration and directed the trial court to issue a new order granting the motion to compel as to the Type A/individual PAGA claims. (*Galarsa*, *supra*, 88 Cal.App.5th at p. 655.) The denial of arbitration was affirmed as to the Type O/nonindividual PAGA claims and those claims were allowed to be pursued in court. (*Ibid.*) We did not address whether the trial court should stay the litigation on the Type O/nonindividual PAGA claims pending the completion of the arbitration.

In June 2024, after a series of status conferences, the trial court entered a stipulated order setting briefing schedules for plaintiff's motion for leave to file a second amended complaint (SAC) and Dollar General's motion to compel arbitration and stay. Plaintiff's motion asserted her proposed "SAC merely seeks to remove all reference to, and clarify that Plaintiff does not maintain or intend to pursue any 'individual' PAGA claim herein. Rather Plaintiff intends to proceed exclusively in her representative capacity under PAGA on behalf of the State of California and the aggrieved employees." Dollar General opposed the motion to amend, arguing it was futile because (1) the threshold dispute of whether plaintiff was an aggrieved employee was subject to arbitration and (2) the proposed SAC did not state a cognizable claim because PAGA did not authorize civil actions brought only on behalf of other aggrieved employees. Dollar General also argued the proposed amendment was pursued in bad faith and its only purpose was to avoid plaintiff's individual arbitration obligations.

In August 2024, the trial court granted plaintiff's motion for leave to file the SAC. Accordingly, plaintiff filed and served the SAC, which sought "to recover civil penalties and any other available relief on behalf of the State of California, resulting from [Labor Code] violations against current and former employees who worked for D[ollar General] in California as nonexempt" employees.

In October 2024, Dollar General filed a renewed motion to compel arbitration and to stay proceedings on the Type O/nonindividual PAGA claims pending a ruling on the

5.

motion and completion of the court-ordered arbitration. Dollar General argued whether plaintiff had experienced any Labor Code violations was a threshold arbitrable dispute covered by the arbitration agreement.

As an alternative to its motion to compel arbitration, Dollar General demurred to the SAC. Dollar General asserted the SAC did not state a claim because PAGA required a PAGA plaintiff to sue on their own behalf *and* on behalf of others.

On November 22, 2024, the trial court held a hearing on the pending motion to compel arbitration and the demurrer. The court determined arbitration was not a mandatory first step for a plaintiff seeking to pursue only Type O/nonindividual PAGA claims. As a result, it denied the motion to compel arbitration. It also overruled the demurrer.

A few days later, Dollar General filed a notice of appeal from the order denying its motion to compel arbitration. We assigned the appeal case No. F089004. On January 14, 2025, Dollar General filed a petition for writ of mandate challenging the order overruling its demurrer to the SAC. We assigned the writ proceeding case No. F089171 and, nine days later, entered an order to show cause why Dollar General's relief should not be granted. We also consolidated the writ proceeding with Dollar General's appeal, ordered Dollar General to file a single opening brief addressing both the pleading and arbitrability issues, and requested the parties address seven specific questions in their briefs.

**DISCUSSION**

I. DEMURRER AND HEADLESS PAGA ACTIONS

A. Standard of Review

Whether a pleading has stated facts sufficient to constitute a cause of action recognized by California law presents a question of law subject to independent review by appellate courts. (Code. Civ. Proc., § 430.10, subd. (e); *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) The interpretation of a statute also presents questions

of law subject to independent review by appellate courts. (*Davis Boat Manufacturing-Nordic, Inc. v. Smith* (2023) 95 Cal.App.5th 660, 672.) Consequently, whether PAGA authorized aggrieved employees to bring a lawsuit containing only Type O/nonindividual PAGA claims is a question of law subject to our independent review.

B. <u>Statutory Text</u>

The parties do not dispute that this civil action, which was filed in 2018, is subject to the version of PAGA in effect from the middle of 2016 until the 2024 amendments took effect. (§ 2699, subds. (v)(1)–(2); see Stats. 2024, ch. 44, § 1 [enacting Assem. Bill No. 2288, effective July 1, 2024]; *id.*, ch 45, § 1 [enacting Sen. Bill No. 92, effective July 1, 2024]; Stats. 2016, ch. 31, § 189.)

That version of PAGA stated any provision of the Labor Code "that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency … for a violation of this code, *may*, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself *and* other current or former employees pursuant to the procedures specified in Section 2699.3." (§ 2699, former subd. (a), italics added.)

1. *Meaning of "And" and "May"*

Our January 2025 order to show cause directed the parties to address whether the word *and* used in section 2699, former subdivision (a) was ambiguous, either facially or latently. To provide context for this issue, the order to show cause stated:

> "Dollar General's writ petition asserts the ordinary and usual usage of the word 'and' is as a conjunctive (see *Amerigraphics, Inc. v. Mercury Casualty Co.* (2010) 182 Cal.App.4th 1538, 1551–1552), but does not explicitly acknowledge the potential ambiguities in the word 'and' (see *Dow v. Honey Lake Valley Resource Conservation Dist.* (2021) 63 Cal.App.5th 901, 903, quoting *South Trust Bank v. Copeland One, L.L.C.* (Ala. 2003) 886 So.2d 38, 42 [' " *Every* use of "and" or "or" as a conjunction involves some risk of ambiguity.' [Citation.] Thus, in the main text of *Words and Phrases* (1953) -- excluding pocket parts -- the word 'and' takes up 61 pages of digested cases interpreting it in myriad

7.

ways, and the word 'or' takes up another 84 pages of digested cases interpreting it in an equally broad array of senses" ']) or the possibility of a latent ambiguity in the text (see *Davis Boat Manufacturing-Nordic, Inc. v. Smith*[, *supra,*] 95 Cal.App.5th [at pp.] 673–674 [discussion of principles used to determine if a latent ambiguity exists]; *Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1495)."

In response, Dollar General's opening brief asserted *and* presumptively is taken in its ordinary conjunctive sense and any other reading would require an exceptional case. The brief quoted the California Supreme Court's statement that courts sometimes adopt a disjunctive reading of *and* but do so only as "an exceptional rule of construction." (*In re C.H.* (2011) 53 Cal.4th 94, 102–103; see *People v. Reynoza* (2024) 15 Cal.5th 982, 991; *People v. Pool* (1865) 27 Cal. 572, 582.)[5] Dollar General argued no exceptional reason exists for deviating from the presumption that *and* was used in its ordinary and usual sense as a conjunctive. Dollar General also asserted a conjunctive reading of *and* would not frustrate the statutory purpose but "best fulfills the law enforcement and private attorney general purposes of PAGA."

Plaintiff agreed that the use of *and* in former subdivision (a) of section 2699 "was intended to mean the conjunctive." Plaintiff argued "the meaning of 'and' is irrelevant to the fundamental question presented, because the Legislature's use of 'civil action' and

_____

**5** Dollar General's analysis of the statutory term *and* is deeper than the analysis set forth in *Leeper v. Shipt, Inc.*, *supra*, 107 Cal.App.5th 1001 or *Williams v. Alacrity Solutions Group, LLC*, *supra*, 110 Cal.App.5th 932. In *Leeper*, the court simply concluded: "The unambiguous and ordinary meaning of the word 'and' is conjunctive, not disjunctive." (*Leeper*, *supra*, at p. 1009.) *Leeper* and *Williams* ignore the California Supreme Court decisions that give *and* an interpretation that is not strictly conjunctive; ignore the secondary authorities discussing the ambiguity of *and*; overlook the principle that California's wage and hour laws are " 'not construed within the narrow limits of the letter of the law, but rather are to be given liberal effect to promote general object sought to be accomplished' " (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087); and do not explain how the interpretation adopted, when applied to the current legal landscape, creates incentives that have the practical effect of maximizing the enforcement of labor laws (see *CRST Expedited*, *supra*, 112 Cal.App.5th at pp. 913–914 [general legislative intent and purpose of PAGA]).

8.

'on behalf of' plainly mean that a PAGA action need only be brought for the benefit of the representative plaintiff as well as absent aggrieve employees." Plaintiff then argued the headless PAGA action would benefit her in four ways. (See pt. I.B.2., *post*.)

Initially, we address the effect of plaintiff's concession. It is well established that California courts are not bound to accept a party's concession on a question of law. (*Desny v. Wilder* (1956) 46 Cal.2d 715, 729; *Sellers v. Superior Court* (2024) 104 Cal.App.5th 468, 478 [rejected Attorney General's concession as to the proper construction of a statute]; *Tun v. Wells Fargo Dealer Services, Inc.* (2016) 5 Cal.App.5th 309, 327 ["we are not bound to follow the meaning of a statute (or the law) conceded by a party"].) Consequently, plaintiff's concession has no impact on our analysis of statutory meaning.

Next, we consider Dollar General's arguments that a conjunctive reading of *and* best serves PAGA's enforcement purpose. These arguments ignore the impact of bifurcating the PAGA action into a portion subject to arbitration and a portion litigated in court. As a result, the arguments do not convince us that *CRST Expedited's* analysis of which interpretation best promotes PAGA's purpose was wrong. (See *CRST Expedited*, *supra*, 112 Cal.App.5th at pp. 914–917.) In particular, Dollar General has not shown Labor Code enforcement will be maximized by requiring PAGA plaintiffs who have signed a predispute arbitration agreement subject to the FAA to choose between (1) pursuing no PAGA claims and (2) arbitrating Type A/individual PAGA claims before litigating Type O/nonindividual PAGA claims in court. In our view, requiring arbitration of the Type A/individual PAGA claims will hinder rather than promote PAGA actions because of the delay and potential for a less favorable outcome associated with arbitration. (See *CRST Expedited*, *supra*, at p. 916.) Stated more bluntly, the parties' positions are not blind to their self-interest, with Dollar General asserting the interpretation that will maximize Labor Code enforcement against employers and plaintiff asserting an interpretation that will reduce private enforcement under PAGA.

9.

Consequently, we again conclude that former subdivision (a) of section 2699's use of *and* in a sentence that uses the permissive verb *may* is ambiguous—that is, reasonably susceptible to more than one interpretation. We further conclude that PAGA's purpose "is best served by interpreting the ambiguous *and* liberally to include both *and* and *or*. Thus, the subdivision permitted the employee, as a representative of the [LWDA], to bring a PAGA action seeking the recovery of civil penalties (1) for the Labor Code violations suffered only by the employee, (2) for the Labor Code violations suffered only by other employees, *or* (3) both." (*CRST Expedited*, *supra*, 112 Cal.App.5th at p. 883, fn. omitted.)

### 2. Meaning of "On Behalf Of"

Plaintiff contends headless PAGA actions are allowed based on the plain meaning of the term "civil action" and the phrase "on behalf of" that are used in former subdivision (a) of section 2699. She contends a lawsuit asserting only Type O/nonindividual PAGA claims qualifies as a "civil action."[6] She also contends the phrase "on behalf of" should be interpreted broadly to include "for the benefit of." (See *CRST Expedited*, *supra*, 112 Cal.App.5th at p. 918 [pt. IV.D.].) This interpretation is supported by a dictionary that defines "on behalf of" to mean "in the interest of **:** as the representative of **:** *for the benefit of*." (Webster's Third New Internat. Dict. (1993) p. 198, italics added.) Plaintiff contends she can attain five types of benefits in a PAGA action that pursues only Type O/nonindividual PAGA claims.

First, plaintiff asserts the action is clearly brought for the benefit of her and other aggrieved employees so long as she "has adequately pleaded the factual predicates for

---

**6**     Code of Civil Procedure section 30 defines a civil action as follows: "A civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." (See also, Code Civ. Proc., §§ 22 [action defined], 24 [kinds of actions], 25 [a civil actions arises out of (1) an obligation or (2) an injury].)

10.

standing under PAGA."  She relies on the discussion of "on behalf of" contained in *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 959–961.

Second, former subdivision (i) of section 2699 provides the "civil penalties recovered by aggrieved employees shall be distributed … 25 percent to the aggrieved employees."  Plaintiff interprets this language to mean she will be part of a group to which civil penalties are distributed "even if no penalties are awarded from violations arising from [her] employment."  Thus, plaintiff contends she may benefit financially from civil penalties recovered regardless of whether those penalties arise specifically from violations she personally suffered.  We disagree with this argument about how recovered civil penalties are distributed.  We interpret the statute to mean that each penalty recovered is split 75-25 between the LWDA and the particular employee who suffered the violation for which the penalty was imposed.  This interpretation provides a clear formula for allocating the funds recovered.  In contrast, plaintiff's approach provides no formula or criteria for determining the amount allocated to each aggrieved employee.

Third, plaintiff argues she benefits from a PAGA action pursuing only Type O/nonindividual PAGA claims because it allowed her to obtain the assistance of experience labor law attorneys.  We note that in situations where both types of PAGA claims are pursued, the Supreme Court stated that "a PAGA plaintiff compelled to arbitrate individual [PAGA] claims may have a personal stake in the litigation of non-individual [PAGA] claims.  For instance, PAGA has a provision for recovery of attorney's fees and costs.  (§ 2699, subd. (g)(1).)  This provision may help plaintiffs secure representation by enticing attorneys to take cases they might not have if limited to recovering fees and costs for individual [PAGA] claims alone."  (*Adolph*, *supra*, 14 Cal.5th at p. 1127.)

Fourth, plaintiff argues she benefits from the PAGA action through the potential preclusive effect recognized by the California Supreme Court in *Arias v. Superior Court*

11.

(2009) 46 Cal.4th 969. In *Arias*, the court stated that, if a judgment is imposed against an employer for civil penalty on a Labor Code violation, "[n]onparty employees may then, by invoking collateral estoppel, use the judgment against the employer to obtain remedies other than civil penalties for the same Labor Code violations." (*Id*. at p. 987.) Plaintiff has not addressed how realistic this potential benefit is when the relevant statute of limitations is applied.

Fifth, plaintiff contends she benefits from the PAGA action generally as a member of the public. She argues PAGA was enacted primarily to benefit members of the general public by punishing violations and deterring future misconduct by both the defendant and by others, and she is necessarily included among such beneficiaries. If the PAGA action succeeds, she asserts that "she may expect to benefit from the resulting increased respect future employers may pay to her civil rights in the workplace, or she may benefit directly should she seek further and newly compliant employment at [Dollar General]."

Dollar General disagrees with plaintiff's interpretation. Dollar General asserts that to bring a PAGA action for civil penalties *on behalf of* someone means seeking the civil penalties that PAGA awards for Labor Code violations against that person. Under this interpretation, a Type A/individual PAGA claim is *on behalf of* plaintiff herself and a Type O/nonindividual PAGA claim is *on behalf of* the employee who suffered the violation for which the penalty is imposed. Under this interpretation, a PAGA action containing only Type O/nonindividual PAGA claims would be brought by the plaintiff only *on behalf of* other current or former employees.

The parties' arguments on this issue of statutory construction are set forth to inform the reading public. We do not decide the issue because whichever interpretation of *on behalf of* is adopted, it would not change the outcome of this case.

12.

## II. ARBITRATING PLAINTIFF'S STATUS AS AN AGGRIEVED EMPLOYEE

### A. Contentions of the Parties

Dollar General contends the trial court erred by failing to compel arbitration of the dispute over whether plaintiff is an aggrieved employee. That particular issue is important because a plaintiff must be an "aggrieved employee" as that term is defined in former subdivision (c) of section 2699[7] to have standing to pursue a PAGA action. (*Adolph*, *supra*, 14 Cal.5th at p. 1117.) In *Adolph*, the court stated in dicta that if the arbitrator determined the plaintiff was not an aggrieved employee and that determination was reduced to a final judgment, the plaintiff "could no longer prosecute [the LWDA's Type O/nonindividual PAGA] claims due to lack of standing." (*Id.* at p. 1124.)

In response, plaintiff contends the arbitration agreement does not require arbitration of the specific factual predicates underlying PAGA standing because her standing is solely a dispute between the State and Dollar General and there is no evidence the State or its authorized representative agreed to arbitrate the standing issue. Plaintiff asserts she signed the arbitration agreement in her individual capacity in March 2016, long before she was vested with any authority to represent or bind the State. She also argues, in effect, that arbitration would be pointless because neither issue nor claim preclusion would bind the State to the outcome because " 'a private arbitration award, even if judicially confirmed, may not have nonmutual collateral estoppel effect under California law unless there was an agreement to that effect in the particular case.' (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 824.)" This assertion is contrary to the dicta in *Adolph* described above.

---

[7] "For purposes of [PAGA], 'aggrieved employee' means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, former subd. (c).)

B.      Text of the Arbitration Agreement

The Dollar General employee arbitration agreement electronically signed by plaintiff in March 2016 provided in part:

> **"Dolgen California LLC ('Dollar General') has a process for resolving employment related legal disputes with employees that involves binding arbitration.  This Dollar General Employee Arbitration Agreement ('Agreement') describes that process and constitutes a <u>mutually binding</u> agreement between you and Dollar General, subject to opt out rights described at the end of this Agreement**.

> "You agree that, with the exception of certain excluded claims described below, any legal claims or disputes that you may have against Dollar General … arising out of your employment with Dollar General or termination of employment with Dollar General ('Covered Claim' or 'Covered Claims') will be addressed in the manner described in this Agreement. You also understand that any Covered Claims that Dollar General may have against you related to your employment will be addressed in the manner described in this Agreement.

> "**<u>Class and Collective Action Waiver</u>:  You and Dollar General may not assert any class action, collective action, or representative action claims in any arbitration pursuant to this Agreement or in any other forum.**"

The arbitration agreement stated its procedures "will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General."  In describing claims not subject to the agreement, it stated:  "Covered Claims also do not include … claims concerning the scope or enforceability of this Agreement."  In accordance with the plain meaning of this provision, a court (not an arbitrator) must decide whether the standing issue is a dispute that falls within the scope of the arbitration agreement.  (See generally, *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83–84 [whether "an arbitration clause in a concededly binding contract applies to a particular type of controversy" is an issue "for judicial determination unless the parties clearly and unmistakably provide otherwise"].)

The arbitration agreement also included a severability clause:  "If any parts of this Agreement are found to be invalid, illegal, or unenforceable, the validity, legality, and/or

14.

enforceability of the remaining provisions will not be affected by that decision, and any invalid, illegal or unenforceable provisions shall be modified or stricken." (See *Keene v. Harling* (1964) 61 Cal.2d 318, 321 [whether a contract is entire or separable is a question of construction determined by the court according to the intention of the parties]; Civ. Code, § 1599.)

### C. The Arbitration Agreement's Scope

In *Galarsa*, we concluded California's "antiwaiver rule invalidates the provision in Dollar General's arbitration agreement stating that the employee 'may not assert any … representative action claims in any arbitration pursuant to the Agreement or in any other forum.' " (*Galarsa*, *supra*, 88 Cal.App.5th at pp. 649–650.) We struck (i.e., severed) the invalid provision waiving representative claims and interpreted what remained of the arbitration agreement. (*Id.* at p. 650.) We described the arbitration provisions quoted above as "broadly worded" and concluded arbitration of the Type A/individual PAGA claims was required and the Type O/nonindividual PAGA claims were not covered. (*Galarsa, supra,* at pp. 650–651.)[8] We disagreed with the United States Supreme Court's determination in *Viking River* that the Type O/nonindividual PAGA claims must be dismissed due to a lack of standing and concluded plaintiff had

---

**8**  Courts often refer to the text of an arbitration agreement as broad or narrow when discussing whether a particular dispute is covered by the agreement. (E.g., *Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 689; *Rice v. Downs* (2016) 248 Cal.App.4th 175, 186; *Bono v. David* (2007) 147 Cal.App.4th 1055, 1067.) When the issue is whether the agreement covers tort claims or is limited to contractual claims, language referring to *any claim arising from or related to the agreement* is characterized as broad and is interpreted to include both contractual and tort claims. (See *Rice v. Downs*, *supra*, at p. 186.) When the arbitration provision uses *arising from* or *arising out of* the agreement and excludes *relating to* and *in connection with* the agreement, courts generally concluded the agreement is limited in scope and covers only contractual issues. (*Ibid.*) Here, the arbitration agreement was broad in the sense that it covered contractual, tort and statutory claims (such as the Type A/individual PAGA claims) arising from plaintiff's employment.

standing to pursue those claims in court. (*Galarsa*, *supra*, at pp. 652–653.) Our interpretation of PAGA was confirmed by the California Supreme Court about a year and a half later when it concluded an aggrieved employee had standing to pursue Type O/nonindividual PAGA claims in court and, thus, a dismissal of such claims was inappropriate. (*Adolph*, *supra*, 14 Cal.5th at p. 1121.)

Dollar General's arguments about the arbitrability of plaintiff's status as an aggrieved employee make many references to *Galarsa* and draw inferences from its language. *Galarsa*, however, did not identify the question of whether plaintiff's standing to pursue the Type O/nonindividual PAGA claims in court was a separately arbitrable issue. Consequently, the decision included no dicta analyzing or deciding whether the terms of the arbitration agreement required the parties to arbitrate that particular issue.

### 1. Basic Principles

Determining the scope of the arbitration agreement is guided by the principles that arbitration is a matter of consent and, generally, parties are free to determine the issues subject to arbitration. (*Viking River*, *supra*, 596 U.S. at p. 659; see *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1352 [parties may limit by contract the issue that they will arbitrate].) Thus, " 'a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration.' " (*Viking River*, *supra*, at p. 660.) Applying these principles to this case, we consider whether the parties specifically agreed to arbitrate the issue of plaintiff's standing to pursue the LWDA's Type O/nonindividual PAGA claims in court. The parties' appellate briefing does not mention conflicting extrinsic evidence. Therefore, we conduct a de novo review of the arbitration agreement's language to determine its scope. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707; Civ. Code, § 1638.)

California's ordinary rules of contract interpretation apply to arbitration agreements. (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1321

(*EFund*).)  The goal of the interpretative process is to give effect to the mutual intention of the parties at the time the contract was formed.  (*Ibid*.; Civ. Code, § 1636.)  Mutual intention (i.e., consent) is determined through an objective standard that examines the reasonable meaning of the parties' words; it is not determined through silent unexpressed intentions.  (*Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 579.)  When ascertaining the parties' mutual intention, courts consider the agreement as a whole, the circumstances under which it was made, and the matter to which is relates.  (Civ. Code, §§ 1641, 1647.)

> 2.     *The Parties' Mutual Intention*

The relevant language of the arbitration agreement stated the parties agreed, with certain exceptions, that "any legal claims or disputes that you may have against Dollar General … arising out of your employment with Dollar General or termination of employment with Dollar General ('Covered Claim' or 'Covered Claims') will be [subject to arbitration as] described in this Agreement."

Here, we assume that (1) the separate issue of plaintiff's standing is a "dispute" and (2) her status as an aggrieved employee is an issue "arising out of her employment with Dollar General."  Consequently, we consider what the parties mutually intended by including the clause "that you may have against Dollar General" in the arbitration agreement.

We start with the clause's first word, that.  "*That* is the defining, or restrictive pronoun, *which* is the nondefining, or nonrestrictive pronoun."  (Strunk & White, The Elements of Style 59 (3d ed. 1979).)  In *Yahoo Inc. v. National Union Fire Ins. Co.* (2022) 14 Cal.5th 58, the Supreme Court discussed the meaning of a clause in an insurance policy beginning with "that."  (*Id*. at p. 68.)  The court concluded it was a "restrictive relative clause" and such a "clause usually modifies the noun that immediately precedes it."  (*Ibid*.)  Based on this precedent, we conclude the words "that you may have against Dollar General" are a restrictive clause modifying the nouns

"claims" and "disputes" appearing immediately before it. Because *that* is restrictive, it limits rather than expands the type of claims and disputes intended to be arbitrated.

Based on the whole of the parties' agreement, we conclude it is not objectively reasonable to find that, at the time of contracting, the parties intended an arbitrator to determine the issue of plaintiff's standing to pursue a representative action such as this PAGA action. Stated from plaintiff's perspective, she would not have expected the issue to be presented to an arbitrator because the LWDA owns the Type O/nonindividual PAGA claims and plaintiff has no direct interest in the civil penalties recovered on those claims. (See *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 393, fn. 16 [courts determine the objective meaning of a contract's language to protect the parties' objectively reasonable expectations].) Whether plaintiff has standing to pursue claims is not a dispute "that [plaintiff] ha[s] against Dollar General." Rather, the issue is a dispute that plaintiff's principal, the LWDA, "ha[s] against Dollar General." (See *Consumer Advocacy Group, Inc. v. Walmart, Inc.* (2025) 112 Cal.App.5th 679, 693 [plaintiff cannot bind the state to arbitrate the LWDA's Type O/nonindividual PAGA claims those arose after the arbitration agreement was entered].) This interpretation of the restrictive clause aligns with the intention expressed in the stricken waiver of representative claims. At the timing the arbitration agreement was executed, the parties would not have expected the question of standing on purely representative claims (i.e., a claim pursued by plaintiff as a representative and in which she had no interest) to be covered by the arbitration clause.

Consequently, we conclude the trial court properly denied Dollar General's motion to compel arbitration of the standing issue.

### DISPOSITION

The order denying Dollar General's motion to compel arbitration is affirmed. Dollar General's petition for a writ of mandate challenging the order overruling its

18.

demurrer is denied.  The order to show cause and the stay is discharged with the finality of this opinion.  Plaintiff shall recover her costs in this consolidated proceeding.


                                                            FRANSON, Acting P. J.

WE CONCUR:


MEEHAN, J.


SNAUFFER, J.

Filed 10/8/25

**<u>CERTIFIED FOR PARTIAL PUBLICATION</u>**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TRICIA GALARSA,<br><br>　Plaintiff and Respondent,<br><br>　v.<br><br>DOLGEN CALIFORNIA, LLC,<br><br>　Defendant and Appellant. | F089004<br><br>(Super. Ct. No. BCV19-102504)<br><br>**ORDER GRANTING PARTIAL PUBLICATION AND MODIFYING OPINION**<br>**[NO CHANGE IN JUDGMENT]** |
| DOLGEN CALIFORNIA, LLC,<br><br>　Petitioner,<br><br>　v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>　Respondent;<br><br>TRICIA GALARSA,<br><br>　Real Party in Interest. | F089171 |


It appearing that part of the nonpublished opinion filed in the above entitled matter on September 9, 2025, meets the standards for publication specified in California Rules of Court, rule 8.1105(c), IT IS ORDERED that the opinion be certified for publication with the exception of part I.D. and II. of the Discussion.


Additionally, it is ordered that the opinion filed herein be modified as follows:

1. On page 2, the first paragraph, add "review granted September 17, 2025" after the citation to "*CRST Expedited, Inc. v. Superior Court* (2025) 112 Cal.App.5th 872, 882."

2. On page 2, footnote 2, add the short cite "(*Leeper*)" after the citation *Leeper v. Shipt, Inc.* (2024) 107 Cal.App.5th 1001.

3. On page 2, footnote 2, add the short cite "(*Alacrity Solutions*)" after the citation *Williams v. Alacrity Solutions Group, LLC* (2025) 110 Cal.App.5th 932.

4. On page 2, the following paragraph is inserted after the first paragraph and before the paragraph beginning "The second question arises only":

> In reaching this conclusion, we have determined the significant change in the legal landscape caused by *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*) must be considered, rather than ignored, when deciding (1) whether PAGA text's is ambiguous and (2) what interpretation best promotes PAGA's purposes. Our Supreme Court does not appear to have specifically endorsed or rejected this approach regarding the impact of changed circumstances on statutory construction, either in the context of remedial Labor Code provisions or more generally. On this apparently novel issue, we consider the change in circumstances relevant because, among other things, when the former version of PAGA was enacted, the Legislature could not have considered and formed an intent on the specific question presented in this case—that is, whether a PAGA plaintiff is allowed to avoid arbitration by bringing a headless PAGA action. The lack of a specific legislative intent means the general intent to maximize the enforcement of labor laws guides the interpretive process and promoting that goal should involve a realistic assessment of how PAGA applies to the post-*Viking River* landscape. In comparison, other cases addressing headless PAGA actions do not discuss the role of the changed circumstances and, thus, imply the change is not relevant to interpreting and applying the former version of PAGA.

5. On page 2 and continuing to page 3, the paragraph beginning "The second question arises only" is deleted in its entirety (including footnote 3) and replaced with the following paragraph, which will also require renumbering of footnote 4 to footnote 3:

> The second question, which is addressed in the unpublished portion of this opinion, arises only if headless PAGA actions were allowed. It

2.

involves standing to pursue the PAGA action as the representative of the Labor and Workforce Development Agency (LWDA), which requires the PAGA plaintiff to be an "aggrieved employee." (See § 2699, former subd. (c) [definition of aggrieved employee].) The question is whether the plaintiff employee's status as aggrieved employee is a separate dispute that must be resolved in arbitration before the headless PAGA action proceeds in court. The answer in this case is not based on a far-reaching rule of law, but reflects the mutual intention expressed in the parties' arbitration agreement. Here, the parties did not intend their agreement to arbitrate to encompass the issue of whether the plaintiff was an aggrieved employee with standing to bring a representative action.

6. On page 3, the following sentence is added to the beginning of the first paragraph under the heading "**TERMINOLOGY**":

> To clarify how certain terms are used in this opinion, we adopt the following definitions.

7. On page 7, heading I.B. is changed from "Statutory Text" to "Applicable Statutory Text."

8. On page, 7, heading I.B.1. *Meaning of "And" and "May"* is renumbered to heading I.C.

9. On page 8, footnote 5 (now footnote 4) beginning "Dollar General's analysis" is deleted. The following sentence and new footnote is added to the end of the first full paragraph beginning "In response, Dollar General's":

> Dollar General's briefing also argued *Leeper*, *supra*, 107 Cal.App.5th 1001, and *Alacrity Solutions*, *supra*, 110 Cal.App.5th 932, supported the conclusion that a pleading asserting only Type O/nonindividual PAGA claims does not state a cause of action.[4]

> > [4] Plaintiff filed her respondent's brief before *CRST Expedited* was published. In that brief, plaintiff agreed with Dollar General that the use of *and* in former subdivision (a) of section 2699 "was intended to mean the conjunctive." Plaintiff argued "the meaning of 'and' is irrelevant to the fundamental question presented, because the Legislature's use of 'civil action' and 'on behalf of' plainly mean that a PAGA action need only be brought for the benefit of the representative plaintiff as well as absent aggrieved employees." (See pt. I.D., *post*.) California courts are not bound to accept a

party's concession on a question of law. (*Desny v. Wilder* (1956) 46 Cal.2d 715, 729; *Sellers v. Superior Court* (2024) 104 Cal.App.5th 468, 478 [rejected Attorney General's concession as to the proper construction of a statute]; *Tun v. Wells Fargo Dealer Services, Inc.* (2016) 5 Cal.App.5th 309, 327 ["we are not bound to follow the meaning of a statute (or the law) conceded by a party"].) Consequently, plaintiff's concession has no impact on our analysis of statutory meaning.

9. Beginning on page 8 and continuing over to page 9, the entire paragraph beginning "Plaintiff agreed" is deleted and the entire first paragraph on page 9 beginning "Initially, we address" is also deleted. These two deleted paragraphs are replaced with the following:

### 1. *Leeper and Alacrity Solutions*

In *Leeper*, the plaintiff attempted to bring a PAGA action without any Type A/individual PAGA claims. The court concluded "that every PAGA action necessarily includes and individual PAGA claim" and, based on this interpretation of PAGA and the complaint, directed the trial court to compel arbitration of the plaintiff's Type A/individual PAGA claim and to stay litigation of the Type O/nonindividual PAGA claims. (*Leeper*, *supra*, 107 Cal.App.5th at p. 1005.) The court quoted text from the current version of section 2699, subdivision (a) and stated: "The unambiguous and ordinary meaning of the word 'and' is conjunctive, not disjunctive. Thus, the clause 'on behalf of the employee *and* other current or former employees' (§ 2699, subd. (a), italics added) means that the action described has *both* an individual claim component (plaintiff's action on behalf of the plaintiff himself or herself) *and* a representative component (plaintiff's action on behalf of other aggrieved employees)." (*Leeper*, *supra*, 107 Cal.App.5th at p. 1009.)

In *Alacrity Solutions*, the court relied on *Leeper* to conclude a former employee is not allowed to sue "solely to recover penalties 'on behalf of … other current and former employees.' " (*Alacrity Solutions*, *supra*, 110 Cal.App.5th at p. 937.) The court also concluded a plaintiff in a PAGA action must seek to recover civil penalties on his own behalf for one or more Labor Code violations and, to avoid the statute of limitations, at least one such claim must be timely. (*Ibid*.) Given Dollar General's reliance on these cases, we next explain why their statutory analysis is not convincing.

### 2. *Principles for Construing the Labor Code*

4.

*Leeper* and *Alacrity Solutions* set forth basic rules of statutory construction and ignore a specific principle established by our Supreme Court for the interpretation of Labor Code provisions. In a recent PAGA decision, the court ended its summary of principles of statutory construction by stating: "Considering the remedial nature of statutes governing employees' wages, hours, and working conditions, these provisions are liberally construed to promote worker protection." (*Stone v. Alameda Health System* (2024) 16 Cal.5th 1040, 1052 (*Stone*).) The court has explained this principle of a liberal construction by stating: "We agree that the remedial purposes of the wage and hour laws require they ' "not [be] construed within *narrow limits of the letter of the law*, but rather are to be given liberal effect to promote the general object sought to be accomplished." ' (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702; see *Brinker Restaurant Corp. v. Superior Court* [(2012)] 53 Cal.4th [1004,] 1026–1027.)" (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087, italics added (*Mendoza*).) Thus, in our view, the approach to interpreting PAGA taken in *Leeper* and *Alacrity Solutions* veers from the proper analytical path at its inception because it overemphasizes the ordinary meaning of the statutory text (i.e., the letter of the law) and underemphasizes promoting PAGA's purposes.

The principles set forth in *Stone*, *Mendoza*, and other wage and hour cases for construing Labor Code provisions appear to contain a gap. In particular, we have located no case in which our Supreme Court has identified the role, if any, a significant, post-enactment change in the legal landscape has on whether a Labor Code provision is ambiguous or how the provision should be interpreted. More generally, we have located no case involving any type of statute, remedial or otherwise, in which the Supreme Court explicitly answered this question.[13]

Here, *Viking River* dramatically changed the legal landscape in which the former version of PAGA is applied. (*CRST Expedited*, *supra*, 112 Cal.App.5th at p. 907.) We conclude that change must be considered

---

[13]    We note that scholarly articles have raised the question. (See Sunstein, *Interpreting Statutes in the Regulatory State* (1989) 103 Harv. L.Rev. 405, 422–423 [a significant change in circumstances since a statute's enactment may produce ambiguity]; see also, Adler, *A Conversational Approach to Statutory Analysis: Say What You Mean & Mean What You Say* (1996) 66 Miss. L.J. 37, 119 [changes in the circumstances in place when the statute was enacted include situations where the legal landscape changes after enactment]; *Mail Fraud* (1987) 101 Harv. L. Rev. 329, 336 ["Statutory interpretation in light of new or changed circumstance is a power implicitly delegated to the courts by Congress."].)

when deciding (1) whether PAGA's text is ambiguous and (2) what interpretation best promotes PAGA's purposes.  First, these conclusions cannot be rejected on the ground that they contradict the original, specific intent of the Legislature because, when the former version of PAGA was enacted, the Legislature could not have considered the particular question that arose only after the decision in *Viking River*—that is, whether PAGA allowed a plaintiff to avoid arbitration by bringing a headless PAGA action.  Second, our approach can be logically inferred from (1) the general principle that PAGA, as a remedial statute, should be liberally construed to promote its purposes (see *Mendoza*, *supra*, 2 Cal.5th at p. 1087) and (2) the concept that, to realistically assess which interpretation most effectively promotes the statute's purposes, a court must consider the practical consequences resulting from the application of each interpretation to the actual circumstances presented.  (See pt. I.C.6., *post*.)

### 3.    Deliberate Use of "And"

In *Leeper*, the court stated the "legislative history reflects that the Legislature deliberately chose the word 'and' and rejected the word 'or' in the statutory description of a PAGA action as 'a civil action … on behalf of [the plaintiff[ *and* other current or former employees.' " (*Leeper*, *supra*, 107 Cal.App.5th at p. 1010.)  The court concluded this change of wording supported its interpretation that *and* was unambiguously conjunctive. (*Ibid*.)

We do not draw the same inferences from the change in text and the legislative history's limited explanation of that change.  The relevant committee analysis discussed technical amendments proposed by the author "to clarify the intent of the bill and correct drafting errors" and stated the change from *or* to *and* was "to correct a drafting error." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended May 12, 2003, p. 8.)  No further explanation was provided, such as a general statement that the change broadened or narrowed the choices available to a PAGA plaintiff.  Similarly, no specific description was provided of why the use of *or* was erroneous or how *and* changed the provision's meaning.  For example, the committee analysis did not state *or* would have required the plaintiff to choose between bringing either Type A/individual PAGA claims *or* Type O/nonindividual PAGA claims rather than allowing both types of claims to be pursued in the same PAGA action. Furthermore, the committee analysis did not describe how the text containing *and* would be applied in the manner intended by the author. There are at least two possibilities why the author preferred *and* over *or*. One is that the author wanted to *limit* the choices available to aggrieved

6.

employees and require them to either (1) forgo all PAGA claims or (2) pursue both Type A/individual PAGA claims and Type O/nonindividual PAGA claims. A second possibility is that the author used *and* with the permissive verb *may* to *expand* the choices given PAGA plaintiff and allow them to pursue (1) Type A/individual PAGA claims alone, (2) Type O/nonindividual PAGA claims alone, *or* (3) both. Consequently, the court's statement that the Legislature accepted the change of *or* to *and* without opposition begs, rather than answers, the question of what the author or the Legislature intended by the change. (See *Leeper*, *supra*, 107 Cal.App.5th at p. 1010.)

The foregoing analysis can be applied to the hypothetical involving parental permission for a snack. (See *CRST Expedited*, *supra*, 112 Cal.App.5th at p. 911.) Suppose a parent said a child *may* have a snack of cookies *or* ice cream and then changed the permission given by stating: "I misspoke, you *may* have a snack of cookies *and* ice cream."[14] Like the Legislature, the parent deliberately changed the wording of the permission given. That change, by itself, does not unambiguously demonstrate the parent used *and* in a strictly conjunctive sense. In our view, permission to do A *and* B is different from a command to do A *and* B, and the most likely interpretation of the parental permission given is that the child has the choice of (1) no snack, (2) cookies alone, (3) ice cream alone, or (4) both cookies and ice cream. In sum, the change of *or* to *and* in this grammatical context does not unambiguously demonstrate an intent to use *and* in a strictly conjunctive sense.

### 4. Supreme Court Decisions Addressing the Ambiguity of "And"

*Leeper* and *Alacrity Solutions* also fail to acknowledge the Supreme Court decisions concluding that, when used in a statute, " 'the word *and* is not always taken conjunctively.' " (*People v. Reynoza* (2024) 15 Cal.5th 982, 991, quoting *People v. Pool* (1865) 27 Cal. 572, 581; see *Washburn v. Lyons* (1893) 97 Cal. 314, 315 [*and* in the clause *published and posted* should be construed to mean *or*].) As a result, *Leeper* and *Alacrity Solutions* do not analyze whether there are exceptional circumstances that warrant the conclusions that the use of *and* in section 2699, former subdivision (a) is ambiguous and that PAGA's purposes are best served by

---

**14** As described in *CRST Expedited*, the grammatical context for this use of *and* is similar to section 2699, former subdivision (a) because *and* links two nonsubject nouns that are the objects of a prepositional phrase and appear in a sentence using the permissive verb *may*. (*CRST Expedited*, *supra*, 112 Cal.App.5th at pp. 908–911.)

an *and/or* interpretation. Our view of the exceptional circumstances is set forth in *CRST Expedited*, *supra*, 112 Cal.App.5th at pages 906 to 907.

### 5. *Secondary Authorities and the Permissive Verb "May"*

*Leeper* and *Alacrity Solutions* also fail to acknowledge any of the secondary authorities discussing the ambiguity of *and*. (E.g., Adams & Kaye, *Revisiting the Ambiguity of "And" and "Or" in Legal Drafting* (2006) 80 St. John's L.Rev. 1167; Kirk, *Legal Drafting: The Ambiguity of "And" and "Or"* (1971) 2 Tex. Tech. L.Rev. 235, 238 [illustrations showing how *and* may be interpreted both "jointly" (conjunctively) and "severally" (disjunctively)]; see 3A Words and Phrases (2007) 166–210 [45 pages of case annotations, excluding the pocket part, addressing the meaning of *and*].) Had they done so, those decisions might have discussed how the use of the permissive verb "may" affects the possible meanings of *and*. "This grant of permission stands in contrast to sentences that mandate or prohibit specified conduct and is significant to our evaluation of the reasonableness of [the PAGA plaintiff's] interpretation [of section 2699, former subdivision (a)]. (See generally, *Revisiting the Ambiguity, supra*, 80 St. John's L.Rev. at pp. 1172–1179.)" (*CRST Expedited*, *supra*, 112 Cal.App.5th at p. 908.)

### 6. *A Realistic Analysis for Promoting PAGA's Purpose*

California's wage and hour statutes in general and PAGA in particular should be "liberally construed to promote worker protection." (*Stone*, *supra*, 16 Cal.5th at p. 1052.) "PAGA is based on the Legislature's intent to maximize the enforcement of labor laws." (*Estrada v. Royalty Carpet Mills, Inc.* (2024) 15 Cal.5th 582, 607.) Neither *Leeper* nor *Alacrity Solutions* explain how their interpretation of PAGA, when applied to the current legal landscape, creates incentives that have the practical effect of maximizing the enforcement of labor laws. In contrast, *CRST Expedited* discussed the lack of a specific legislative intention on "whether PAGA allowed a plaintiff to avoid arbitration by bringing a PAGA action that asserts only [Type O/]nonindividual PAGA claims" (*CRST Expedited, supra,* 112 Cal.App.5th at p. 913); identified the general legislative intent and purpose underlying PAGA; and analyzed which interpretation of PAGA best promoted effective Labor Code enforcement after the legal landscape was reshaped by *Viking River*, *supra*, 596 U.S. 639. (*CRST Expedited*, *supra*, at pp. 912–918.)

10. On page 9, the second paragraph beginning "Next, we consider" is deleted and replaced with the following paragraph:

8.

In this case, Dollar General has argued that a conjunctive reading of *and* best serves PAGA's enforcement purpose. These arguments, however, do not address the practical impact of bifurcating the PAGA action into a portion subject to arbitration and a portion litigated in court. As a result, the arguments do not convince us that *CRST Expedited* wrongly determined which interpretation best promotes PAGA's purpose. (See *CRST Expedited*, *supra*, 112 Cal.App.5th at pp. 914–917.) In particular, Dollar General has not shown Labor Code enforcement would be maximized by requiring PAGA plaintiffs who have signed a predispute arbitration agreement subject to the FAA to choose between (1) pursuing no PAGA claims and (2) arbitrating Type A/individual PAGA claims before litigating Type O/nonindividual PAGA claims in court. In our view, requiring arbitration of the Type A/individual PAGA claims will hinder rather than promote PAGA actions because of the delay and potential for a less favorable outcome associated with arbitration. (See *CRST Expedited*, *supra*, at p. 916.) Stated more bluntly, the parties' positions are not blind to their self-interest. Dollar General is not asserting an interpretation that will maximize Labor Code enforcement against employers, and plaintiff is not asserting an interpretation that will impede private enforcement under PAGA.

11. On page 10, before the paragraph beginning "Consequently, we again" insert the following heading: "*7. Conclusion*".

12. On page 10, the paragraph beginning "Consequently, we again" is deleted and replaced with the following two paragraphs:

Based on the foregoing, we confirm the interpretation adopted in *CRST Expedited*. First, former subdivision (a) of section 2699's use of *and* in a sentence that uses the permissive verb *may* is ambiguous—that is, reasonably susceptible to more than one interpretation—both in the abstract and in the context of PAGA. Second, PAGA's purpose "is best served by interpreting the ambiguous *and* liberally to include both *and* and *or*. Thus, the subdivision permitted the employee, as a representative of the [LWDA], to bring a PAGA action seeking the recovery of civil penalties (1) for the Labor Code violations suffered only by the employee, (2) for the Labor Code violations suffered only by other employees, *or* (3) both." (*CRST Expedited*, *supra*, 112 Cal.App.5th at p. 883, fn. omitted.)

We reach these conclusions without going outside *the letter of the law* as that phrase is used in California Supreme Court decisions interpreting Labor Code provisions. (See e.g., *Mendoza*, *supra*, 2 Cal.5th at p. 1087.) Rather, we have given the letter of the law—specifically *and*–a

recognized but less ordinary meaning due to the extraordinary circumstances surrounding PAGA actions. The less ordinary meaning best promotes the purposes underlying the version of PAGA applicable in this case.

12. On page 10, the heading I.B.2. *Meaning of "On Behalf Of"* is renumbered to heading D.

13. On page 10, the first sentence of the paragraph beginning "Plaintiff contends headless" is deleted and replaced with the following sentence:

The alternate statutory interpretation advanced by plaintiff asserts the plain meaning of the term "civil action" and the phrase "on behalf of" that are used in former subdivision (a) of section 2699 allow headless PAGA actions.

14. On page 13 at the end of section II.A., before section II.B., the following paragraph is inserted:

The question whether the plaintiff employee's status as aggrieved employee is a separate dispute that must be resolved in arbitration before the headless PAGA action proceeds in court does not appear to have been decided by a California appellate court since the United States Supreme Court decided *Viking River, supra,* 596 U.S. 639. Pre-*Viking River* case law rejected the contention that the issue of a plaintiff's status as an "aggrieved employee" must first be arbitrated before the plaintiff could pursue a PAGA action in court. (*Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 995; *Hernandez v. Ross Stores, Inc.* (2016) 7 Cal.App.5th 171, 178 ["determination of whether the party bringing the PAGA action is an aggrieved party ... should not be decided separately by arbitration"]; *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 649 ["petitioner cannot be compelled to submit any portion of [the] PAGA claim to arbitration, including whether he was an 'aggrieved employee' "].)

15. On page 18, in the second paragraph before the Disposition beginning "Based on the whole" there is a typographical error in the parenthetical description of "*Consumer Advocacy Group, Inc. v. Walmart, Inc.*" The word "those" is replaced with "that."

16. On page 18, in the last sentence of the second paragraph before the Disposition beginning "At the timing," the word "timing" is replaced with "time."

10.

There is no change to the judgment.

FRANSON, Acting P. J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.